963 P.2d 204 (1998)
SEATTLE PROFESSIONAL ENGINEERING EMPLOYEES ASSOCIATION, an unincorporated voluntary association; Victoria Beach, William Osborn, Todd Ritcheson and Brandt Castleton, individuals, on behalf of themselves and all persons similarly situated, Appellants,
Department of Labor & Industries of the State of Washington, Appellant,
v.
The BOEING COMPANY, Respondent.
No. 40426-1-I.
Court of Appeals of Washington, Division 1.
August 31, 1998.
As Amended on Denial of Reconsideration October 6, 1998.
*206 Richard P. Blumberg, James H. Webster, Lynn D. Weir, Webster, Mrak & Blumberg, Seattle, Jeff B. Kray, Olympia, for Appellants.
Philip S. Morse, Karen P. Kruse, Perkins Coie, Seattle, for Respondent.
Douglas E. Smith, Lane, Powell, Spears, Lubersky, Seattle, Amicus Curiae on behalf of Washington Retail Association.
*205 COLEMAN, Judge.
This class action challenged the Boeing Company's long-standing practice of requiring newly hired employees to attend an unpaid orientation prior to reporting for their first day of work. The plaintiffs asserted that the orientation, itself, was work and that Boeing was required to remunerate the employees at their contract rate for the time they spent at the orientation. After reviewing extensive written materials, the trial court ruled on both parties' motions for partial summary judgment, and both parties now appeal. Included in the trial court's order were rulings that: (1) attendance at orientation was "work;" (2) the plaintiffs were not entitled to a remedy based on a contract or quasi-contract theory but that they were covered by the minimum wage acts of Oregon, Washington, and Pennsylvania; (3) the rate of compensation owed the employees for attending the orientation was the statutory minimum wage not their contract wage; (4) compliance with the minimum wage statutes is measured hour by hour, not by workweek; and (5) a three-year statute of limitation period is applicable to a Washington Minimum Wage Act (MWA) claim.
Boeing does not challenge the Superior Court's conclusion that attendance at orientation constituted work. Our review is limited, accordingly, to addressing the issues raised by the parties.
After careful consideration, we find that the trial court was correct in dismissing the plaintiffs' contract and quasi-contract claims and in applying a three-year statute of limitation to the plaintiffs' statutory wage claims. However, the trial court erred as a matter of law by concluding that the plaintiffs were entitled only to the statutory minimum wage, not their normal wage, for the time they spent at the required orientation.
Up until the filing of this lawsuit, Boeing did not pay newly hired workers for attending a company required "pre-employment" orientation.[1] At the time the plaintiffs attended orientation, they had accepted Boeing's offer of employment but had yet to begin the duties for which they were hired. The employment agreements between Boeing and the plaintiffs consisted of Boeing documents offering employment and confirming the employees' acceptance of employment. Within these documents, a sign-up date informed the employee when to attend orientation, and a start date identified the date the employee was to begin performing the specific tasks for which he or she was hired. The correspondence was clear that Boeing did not consider the employees to be on the payroll until the start date.
Because this is an appeal of a summary judgment order, our review is de novo. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). We first address the assignments of error relating to the trial court's dismissal of the plaintiffs' contract claims. We then address the court's rulings on the plaintiffs' statutory wage claims.
*207 Contract Claims:
The plaintiffs first argue that the employment agreement provision calling for orientation to not be compensated was the result of a mutual mistake and that the contracts should be reformed. A mutual mistake occurs "when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document." Halbert v. Forney, 88 Wash.App. 669, 674, 945 P.2d 1137 (1997).
The test for mutuality of mistake as stated in section 152 of the Restatement (Second) of Contracts consists of three parts. First, the mistake must pertain to a basic assumption upon which the contract is made. Second, the mistake must have a material effect on the agreed exchange of performances. Third, the mistake must not be one where the party adversely affected by the mistake bears the risk of loss. Washington has adopted these tests. See Childers v. Alexander, 18 Wash.App. 706, 709, 571 P.2d 591 (1977) (mutual mistake may be applied only where the mistaken fact was the underlying basis of the entire bargain and, when discovered, the essence of the agreement is destroyed). Our Supreme Court has also adopted the Restatement's definition of mistake, which is "a belief not in accord with the facts." Simonson v. Fendell, 101 Wash.2d 88, 91, 675 P.2d 1218 (1984) (citing Restatement (Second) of Contracts § 151 (1981)).
The record is clear that Boeing never intended to pay for orientation nor was it aware that some of the plaintiffs may have expected to receive compensation for attending orientation. In this case, there was no mistake of fact.
"The Restatement recognizes that such mistakes can include a misunderstanding of the law, since the law in existence at the time of the making of the contract is part of the total state of facts at that time."[2]Halbert, 88 Wash.App. at 674, 945 P.2d 1137 (footnote omitted). Here, both sides apparently were mistaken that attendance at orientation was legally classified as work. The plaintiffs argue that this mistake justifies the use of reformation. Yet, reformation is justified only if the parties' intention was identical at the time of the transaction and the written agreement does not express that intention. Childers, 18 Wash.App. at 710, 571 P.2d 591. Courts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and "foist upon the parties a contract they never made." Childers, 18 Wash.App. at 711, 571 P.2d 591 (quoting Dan B. Dobbs, Handbook on the Law of Remedies, § 11.6, at 746 (1st ed.1973)).
As previously stated, it was clear that Boeing did not intend to pay for attendance at orientation because it did not believe that the activities conducted at the orientation constituted work. Thus, neither the trial court nor this court is in a position to rewrite the parties' intent by rewriting the contracts.
The plaintiffs alternatively assert that the portion of the contract that requires attending orientation prior to being placed on the payroll should be partially rescinded because it violated the public policy contained in state wage and hour laws that requires compensation for all time worked. Where an employer and employee "attempt to make a contract of employment in violation of the clearly expressed provision of the statute, the natural right of the employer and the employee to contract between themselves must,..., yield to what the legislature has established as the law." Pillatos v. Hyde, 11 Wash.2d 403, 407, 119 P.2d 323, 137 A.L.R. 839 (1941); see also McDonald v. Wockner, 44 Wash.2d 261, 272, 267 P.2d 97 (1954) (agreement to forgo compensation owing under a union contract is void as to public policy); Motor Contract Co. v. Van Der Volgen, 162 Wash. 449, 454, 298 P. 705, 79 *208 A.L.R. 29 (1931) ("agreement to waive rights involving a question of public policy is void").
The trial court correctly identified the problem with partial rescission in this case by noting that rescinding only the portions of the employment agreements concerning unpaid orientation would not by itself result in a separately enforceable contract. Once the erroneous provisions are stricken, the agreements still contain fixed starting dates for employment that do not encompass attendance at orientation. As is the case with reformation, we are not at liberty, under the guise of construing the contract, to disregard contract language or revise the contract. Rones v. Safeco Ins. Co. of Am., 119 Wash.2d 650, 654, 835 P.2d 1036 (1992); Wagner v. Wagner, 95 Wash.2d 94, 101, 621 P.2d 1279 (1980).
The plaintiffs urge this court to adopt a broader interpretation of the court's power to partially rescind a contract. According to the plaintiffs, where partial enforcement would serve the ends of justice, the court should not be limited to rescinding a provision based on its mechanical divisibility.[3]See Wood v. May, 73 Wash.2d 307, 313, 438 P.2d 587 (1968). However, mechanical divisibility remains the rule rather then an exception. Our courts have applied the more generous interests of justice test only to cases involving noncompetition clauses. See Wood, 73 Wash.2d at 314, 438 P.2d 587. We decline the invitation to extend this analysis to other aspects of employment contracts.
In addition, as previously stated, the plaintiffs' public policy justification for requesting partial rescission relies on the statutory requirement that employees receive compensation for all work. Since the plaintiffs rely on the MWA, RCW Ch. 49.46 as the basis for invalidating this provision of the contract, we first look to the statute for an appropriate remedy.
The presence of a statutory remedy is also important in reviewing the plaintiffs' claim for restitution. Only where there is not a complete and adequate remedy at law should the court look to equity. Galladora v. Richter, 52 Wash.App. 778, 786, 764 P.2d 647 (1988); Orwick v. City of Seattle, 103 Wash.2d 249, 252, 692 P.2d 793 (1984). As a result, the plaintiffs' claim for restitution needs to be addressed only if the MWA fails to provide an adequate and complete legal remedy. We do not address the plaintiffs' claim for restitution because the MWA includes provisions to remedy violations of the Act, which we find to be a complete and adequate remedy.
Minimum Wage Act Claims:
Turning now to the statutory provisions of Washington's minimum wage act, we note as a threshold matter that only those employees who are covered under the MWA or similar provisions in other states will be eligible for compensation. The parties do not dispute that the trial court correctly dismissed the state wage act claims of employees in Alabama because Alabama has no minimum wage act. Similarly, the state wage act claims of Kansas and Virginia employees were properly dismissed. Boeing is subject to the Fair Labor Standards Act of 1938, and Kansas excludes employers that are subject to the FLSA from its minimum wage act. Kan. Stat. Ann. § 44-1202. Virginia excludes employees that are covered by the FLSA from its minimum wage act. Va. Code § 40.1-28.9(B)(12).
The trial court also dismissed the claims of Washington, Oregon, and Pennsylvania individuals employed in executive, administrative, or professional capacities because each of these states' MWAs explicitly excludes these classes of workers from its provisions. See RCW 49.46.010(5)(c); 43 PA. Cons.Stat. Ann. § 333.105(a)(5); Or.Rev.Stat. § 653.020(3). This ruling was also correct.
As to the remedy supplied by the MWA, the plaintiffs argue that the trial court erred in ruling that the MWA entitled them only to the statutorily defined minimum wage as compensation for the time spent at orientation. The trial court supported its ruling by discounting the Department of Labor and *209 Industries' interpretation that compensation under the MWA must be at the agreed hourly rate because the Department relied upon a statutory provision that pertains to the payment of wages upon termination.
However, as the plaintiffs point out, the Department's interpretation also states that "The Washington Minimum Wage Act, Chapter 49.46 RCW, requires that employees be paid for all hours worked at the agreed regular rate." While we are not bound by a department's interpretation of a statute, the opinions of administrative agencies charged with administering a statute are entitled to considerable weight in determining legislative intent. Pasco Police Officers' Ass'n. v. City of Pasco, 132 Wash.2d 450, 470, 938 P.2d 827 (1997); Bradley v. Department of Labor & Indus., 52 Wash.2d 780, 786, 329 P.2d 196 (1958).
In addition, this court has previously stated that Washington's wage and hour statutes establish that "an employee has a right to be paid either his or her regular wage or when appropriate, overtime for all time worked." United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co., 84 Wash.App. 47, 51, 925 P.2d 212 (1996), review denied, 133 Wash.2d 1021, 950 P.2d 478 (1997). While we recognize that our opinion in Mutual Benefit concerns pay for off-the-clock work required by an employer after an employee began work, the reasoning in Mutual Benefit is applicable to the present case. There is little if any difference between a worker who is determined as a matter of law to be an employee prior to the agreed start date as a result of attendance at an employer-required orientation and an employee who is performing work off the clock during the course of employment. In both situations, work is performed without compensation.
In order for the plaintiffs to establish their statutory wage claim, they had to show that their employer "did not pay them their regular wage, or overtime when applicable, for all the time they were `employed.'" Mutual Benefit, 84 Wash.App. at 52, 925 P.2d 212. "Employ" means "to permit to work." RCW 49.46.010(3). In this case, the plaintiffs have shown that Boeing required them to attend orientation as a part of their employment contract and that the activities at orientation have been held to be work. Thus, the plaintiffs were legally considered employees at the time they attended orientation and they consequently have a right to be paid their regular wages.
Boeing asserts that the MWA requirement that an employer pay wages "at a rate of not less than" the established state minimum wage rate means that only the minimum wage must be paid for each hour of work. RCW 49.46.020(1). We, however, find that the MWA requires employers to pay the agreed upon or regular rate, which cannot be less than the statutory minimum for all nonovertime hours that an employee works.
Boeing argues and the trial court ruled that since orientation occurred before the plaintiffs' official start date, there was no "regular wage." We do not find this argument persuasive. Boeing agreed to pay the employees a certain rate once they began what Boeing considered to be work, and the employment agreements for each employee contained just one pay rate. Regardless of the type of work performed by an employee, the employee would be paid the agreed-upon rate. Thus, the qualified employees should have been compensated for the time spent at orientation at the agreed-upon rate as contained in their employment agreement because orientation was work and the qualified plaintiffs were therefore Boeing employees at the time they attended orientation.
Moreover, the plaintiffs presented evidence supporting their contention that Boeing would have paid them the contract rate for attending orientation if Boeing had not been mistaken that orientation was not work. Employees that were not able to attend a formal orientation session because they were hired in a remote location were compensated at their regular rate when they completed the same sign-up information on their start date. Also, Boeing chose to compensate some vice-presidents for their attendance at orientation. Finally, after Boeing recognized its error, it began paying employees at the agreed rate for the time they spent attending a slightly modified orientation. Boeing presented *210 no evidence other than mere speculation that it would have paid the plaintiffs anything other than the agreed rate for their attendance at orientation.
This is not to say that an employer could not bargain for different rates of pay for different types of work performed by an employee as long as the employer complied with the MWA. Here, however, there is no evidence that Boeing negotiated to pay a different rate for orientation. Rather, all the evidence points to the fact that Boeing was mistaken as a matter of law in its belief that orientation was not work and that compensation was not required. Boeing's claim that they bargained for a rate of zero is an unpersuasive attempt to mold the facts of this case to invoke an analysis of whether Boeing bargained to pay a different rate for attendance at orientation.
To summarize, we find that the plaintiffs are entitled under the MWA to receive their agreed rate as compensation for attending orientation because Boeing agreed to pay the plaintiffs a certain hourly rate for work and Boeing required the plaintiffs to attend orientation which was subsequently held to be work. Accordingly, we find that the trial court erred in holding that the rate of compensation was the applicable minimum wage.
We do not address whether compliance with the MWA should be evaluated on an hourly or workweek basis because our determination that the employees are entitled to their agreed rate renders this issue moot.
Statute of Limitation:
The trial court held that the "[p]laintiffs' claims for compensation are based on a violation of their statutory employment rights and are thus, subject to the limitation period of three years as provided in RCW 4.16.080(2)."[4] At first blush, this ruling appears to be contrary to Supreme Court precedent that applied a two-year statute of limitations to a statutory wage claim. Cannon v. Miller, 22 Wash.2d 227, 248-49, 155 P.2d 500, 157 A.L.R. 530 (1945). In support of its ruling, the trial court cited previous cases that had eroded the rationale in Cannon and accordingly found "that [Cannon's] viability as established precedent is questionable." See Stenberg v. Pacific Power & Light Co., 104 Wash.2d 710, 720, 709 P.2d 793 (1985) (applying a broad interpretation to the term "injury to person"); State ex rel. Bond v. State, 59 Wash.2d 493, 498, 368 P.2d 676 (1962) (stating that an action on liability created by statute will fall within the two-year catchall statute only if there is no other applicable statute of limitation); Lewis v. Lockheed Shipbuilding & Constr. Co., 36 Wash.App. 607, 613, 676 P.2d 545 (1984) (where the defendant directly invades a legally protected interest of the plaintiff, a three-year statute of limitation applies).
Division Three of this court recently reviewed Cannon and the other cases cited by the trial court and held:
Based on this case law, we conclude that Cannon stands for no more than the proposition that a claim based upon wage and hour statutes is not a contract claim. That proposition does not in any way diminish the argument that violation of a wage and hour statute is an invasion of a personal right subject to the three-year statute of limitations and we so hold.
Sorey v. Barton Oldsmobile, 82 Wash.App. 800, 806, 919 P.2d 1276 (1996), review granted, 131 Wash.2d 1001, 932 P.2d 643 (1997) (settled prior to the Supreme Court's review). The Sorey court further distinguished Cannon by the following:
The court in Bond also distinguished Cannon by noting that the Cannon court did not come to its conclusion simply because "it was an action on a liability created by statute" but rather because there was no other provision of the statute of limitations cited by the parties which was applicable. Implicit in the analysis is that if subsection (2) of RCW 4.16.080 had been argued in *211 Cannon, the result may well have been different.
Sorey, 82 Wash.App. at 805, 919 P.2d 1276.
Boeing argues that a two-year statute of limitation as prescribed by the catchall statute, RCW 4.16.130,[5] was proper because the Supreme Court's 1945 ruling that a two-year limitation applies has not been overruled. See Cannon, 22 Wash.2d at 249, 155 P.2d 500. The Washington Retail Association was granted amicus status and submitted what appears to be the same brief submitted to the Supreme Court for their review of Sorey. The Association proffers a three-prong argument in favor of a two-year statute of limitation.
First, the Association argues that a two-year statute of limitation has been accepted as the appropriate period for statutory wage claims as evidenced by the Supreme Court's prior ruling in Cannon, the Legislature's implicit adoption of a two-year statute of limitation, and by the Department's own recognition of a two-year limitation period. Both the Legislature's implicit adoption and the Department's interpretation rely on Cannon. Yet, as illuminated by the Sorey court, the Cannon court addressed only whether a claim under the wage and hour statute was a contract claim. Thus, the question of whether a claim under the statutory wage act fits within subsection 2 which applies to an "injury to the person" remains unanswered.
Second, the Association argues that statutory wage claims do not constitute an injury to the person and thus do not fall within RCW 4.16.080(2). Rather, the Association claims that this subsection is used for injuries based on "tort." However, as pointed out by the Sorey court, our Supreme Court has stated that "the term `injury to person', where used in a limitation statute, generally is given a comprehensive meaning." Sorey, 82 Wash.App. at 806, 919 P.2d 1276 (quoting Stenberg, 104 Wash.2d at 720, 709 P.2d 793).
Finally, the Association argues that a two-year limitation period is appropriate to make Washington law consistent with federal law and the wage laws of other states. Yet, neither our Legislature nor our court's are bound by the decisions of other states. Weeks v. Chief of State Patrol, 96 Wash.2d 893, 897, 639 P.2d 732 (1982). Our primary concern is to give the statute the meaning intended by our Legislature. Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). Where statutory language is clear, it will be given effect. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813, 828 P.2d 549 (1992).
Thus, our task is to determine whether a statutory wage act claim is an "injury to the person." RCW 4.16.080(2). An injury is broadly defined in the law to include "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property." Black's Law Dictionary 924 (4th rev. ed.1968). The MWA creates a personal right for an employee "to be paid either his or her regular wage or, when appropriate, overtime for all time worked." Mutual Benefit Life, 84 Wash.App. at 51, 925 P.2d 212. Consequently, the failure to pay an employee the required wage under the MWA violates the rights of the employee and is appropriately considered an injury to the person. Accordingly, we agree with Sorey and affirm the trial court's determination that a three-year statute of limitation applies to the plaintiffs' claims.
In sum, we find that the trial court's rulings were correct with one exception. The minimum wage act does not limit recovery to the statutory minimum wage. Rather, the MWA entitles eligible employees to their agreed rate for the time they spent at orientation. In addition, (1) the trial court properly dismissed the plaintiffs' claims for recovery based on reformation, partial rescission, and restitution; (2) the trial court properly dismissed the state wage claims of exempt employees from Washington, Oregon, and Pennsylvania, as well as all plaintiffs from Alabama, Kansas, and Virginia; and (3) the trial court properly applied a three year statute of limitation for employee wage claims.
*212 Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[6]
WEBSTER and COX, JJ., concur.
NOTES
[1] Boeing used the orientation to welcome new employees, review and verify report-to-work information, complete miscellaneous employment paperwork, photograph employees for Boeing identification badges; present information on insurance benefits, union representation, and other administrative details; and introduce new employees to Boeing corporate culture.
[2] The Restatement provides:

Facts include law. The rules stated in this Chapter do not draw the distinction that is sometimes made between "fact" and "law." They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time. A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of [that party's] acts, may, therefore, come within these rules.
Restatement (Second) of Contracts § 151 cmt. b (1981).
[3] Also known as the blue pencil test, mechanical divisibility requires that the remainder of the contract be both grammatically meaningful and enforceable once the offending portions are lined out. Wood v. May, 73 Wash.2d 307, 313, 438 P.2d 587 (1968).
[4] RCW 4.16.080 lists actions with a three-year statute of limitation. Subsection 2 states: "An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated." RCW 4.16.080(2).
[5] Section 4.16.130 is a catchall statute of limitation that provides: "An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued."
[6] In its motion for reconsideration Boeing asserts that Oregon's and Pennsylvania's minimum wage acts permit only the minimum wage to be recovered and that our opinion did not specifically address this issue. We are not persuaded by Boeing's argument for two reasons. First, we note that Boeing presents no authority to support its assertion. Second, it appears that Boeing's argument is premised on the FLSA's adoption of a work week to determine whether the average wage is at least equal to the minimum wage. Yet, our determination that the qualified nonexempt employees are entitled to the agreed rate is not premised on an adoption of either an hourly or weekly basis for determining compliance with the MWA. This is not a case where an employer recognized that a required activity was work and bargained to pay employees a sub-minimum wage. Rather, it is a case where the employer erred as a matter of law in believing that attendance at orientation was not work.