[No. 67519-8.    En Banc.]

Argued October 26, 1999.    Decided January 27, 2000.

SEATTLE PROFESSIONAL ENGINEERING EMPLOYEES
ASSOCIATION, ET AL., *Petitioners*, v. THE BOEING COMPANY,
*Respondent*.

*Webster, Mrak & Blumberg, by James Henry Webster,*

*Lynn Denise Weir,* and *Richard Paul Blumberg*, for petitioners.

*Perkins Coie,* by *Philip S. Morse* and *Karen P. Kruse*, for respondent.

*Lane Powell Spears Lubersky, L.L.P.,* by *Douglas Edward Smith*, on behalf of Washington Retail Association, amicus curiae.

TALMADGE, J. — We are asked in this case to decide the scope of the remedy afforded Boeing employees required by the company to attend, without compensation, mandatory preemployment orientation sessions, which the company now concedes constituted work. Under the theories of the case presented to us, we hold the employees not otherwise exempt under Washington Minimum Wage Act (WMWA), chapter 49.46 RCW, were entitled to recover damages as specified in RCW 49.46.090. We further hold the applicable limitation period for the employees' claims is three years. Finally, we find the employees did not state contractual or equitable claims against Boeing. Consequently, we affirm the judgment of the trial court.

## ISSUES

1. Did the employees here state claims under the WMWA?

2. What is the measure of damages for claims under the WMWA when an employer fails to pay an employee for work?

3. Which statute of limitations is applicable to claims under the WMWA?

4. Did the employees state claims in contract or equity?

5. Are the employees' claims, if any, preempted by federal labor law?

## FACTS

For many years prior to this lawsuit, Boeing required new employees to attend, without pay, a "pre-employment" orientation session. Employees would engage in a myriad of activities during these sessions, including completing payroll forms, selecting employee benefit options, signing tax forms for Boeing, executing documents assigning any interest in new inventions to Boeing, viewing Boeing videos, hearing union presentations, and being photographed for security badges. These sessions lasted up to a day.[1] Boeing clearly informed each class member they would not be paid for the preemployment session. For instance, the following paragraph was included in the confirmatory letter Boeing sent to one of the individual employees:

> We have scheduled you for a pre-employment signup processing and orientation in our Employment Office on April 4, 1991, beginning at 7:45 a.m. Your first day on the payroll will be April 5, 1991. Please call . . . if you will be unable to meet this schedule.

Clerk's Papers at 1578.

Seattle Professional Engineering Employees Association (SPEEA) is the representative for many of Boeing's professional and technical employees, including some of the class members, for purposes of collective bargaining on pay, wages, hours and other working conditions. SPEEA was aware of Boeing's preemployment orientation sessions and negotiated with Boeing to allow its representatives to

---

[1]In 1980, Boeing employees in Wichita, Kansas, complained to the United States Department of Labor regarding Boeing's practice of requiring prospective employees to attend a three-week, uncompensated preemployment training course and requiring new employees to purchase their own tools. Clerk's Papers at 1248-60. Ultimately, Boeing appears to have discontinued this lengthy mandatory preemployment training course.

discuss union membership with employees at these sessions.

In 1992, SPEEA filed a complaint with the Washington Department of Labor & Industries (DLI), the state agency responsible for the administration and enforcement of Washington's wage and hours laws, Title 49 RCW. DLI found Boeing's preemployment orientation sessions constituted work.

Ultimately, SPEEA and several individual employees (the employees) instituted this class action in the King County Superior Court on their own behalf and for all similarly situated present and former Boeing employees nationwide, alleging the orientation sessions were work for which Boeing owed them compensation. The trial court certified the individual employees as representatives of a class of persons hired or rehired by Boeing between December 15, 1989 and April 2, 1996 in a number of states. The DLI intervened before class certification, seeking injunctive and declaratory relief and damages on its own behalf and for current and former employees of Boeing.

The parties moved for summary judgment on liability. Boeing sought dismissal of all the individual wage-hour law, contract, and quasi-contract claims on the merits because the claims were barred by a two-year statute of limitations. Boeing also contended the claims of the union-represented class members should be dismissed as preempted by federal labor law and because the employees failed to exhaust contractual remedies. The employees asserted the mandatory preemployment orientation sessions were work, and they were entitled to compensation at their regular rate of pay for such work; they contended a six-year statute of limitations applied to their claims.

The trial court, the Honorable Michael Spearman, ruled the employees' attendance at orientation sessions constituted work, for which the employees were entitled to compensation. The trial court denied relief on the employees' individual contract and quasi-contract claims, but ruled the employees were entitled to relief based on the WMWA,

measured by the statutory hourly wage. The court denied relief to class members who were professional, executive, and administrative employees because they were exempt from the WMWA. The court also held the employees' claims were subject to a three-year statute of limitations, not the two-year limit argued by Boeing. The court allowed relief to certain out-of-state employees in those states with minimum wage acts and denied relief to employees in states without such laws. The trial court further ruled the statutory claims were not preempted by federal labor law. Ultimately, the trial court entered judgment in the amount of $420,157.50 in favor of the employees.[2]

The parties appealed. Rather than appealing the entire trial court decision, Boeing elected to appeal only those portions of the decision pertaining to remedies and the applicable statute of limitations. Thus, Boeing conceded the mandatory preemployment orientation sessions constituted work. Subsequently, the Court of Appeals, Division One, affirmed the trial court in all respects, except for the amount of wages owed to those employees covered by the WMWA. The court held those employees were entitled to recover the rate of pay specified in their contracts, not merely the statutory minimum wage rate. *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 92 Wn. App. 214, 963 P.2d 204 (1998). The parties petitioned us for review essentially on Washington law theories of recovery, which we granted.

## ANALYSIS

In light of Boeing's concession that its mandatory preemployment orientation sessions constituted work, the principal issue in this case is the remedy available under Washington law to the employees for Boeing's refusal to pay them for their work.

---

[2]The judgment amount included $258,916.77 in total wage liability and $161,240.73 in interest. However, the issue of an award of attorney fees was held open until March 6, 1997. The trial court disposition of the issue is not of record.

Before analyzing the particular contentions of the parties on the available remedies, it is useful to again review Washington's statutory wage-hour remedies for employees. The Washington Legislature has enacted a series of statutory remedies for employees wrongfully deprived of proper wages. As we noted in *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157-58, 961 P.2d 371 (1998):

> The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages, including the statutes at issue here which provide both criminal and civil penalties for the willful failure of an employer to pay wages. See *United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 51-52, 925 P.2d 212 (1996) (citing from chapters 49.46 and 49.48 RCW, and noting RCW 49.52.050 in discussing the statutory scheme of state laws granting employees nonnegotiable, substantive rights regarding minimum standards for working conditions, wages, and the payment of wages). In RCW 49.48, the Legislature mandated that employers pay employees all wages due upon the conclusion of the employment relationship and banned all withholding or diversion of wages by employers unless specifically approved by statute. RCW 49.48.010. The Legislature allowed recovery of attorney fees in actions to recover wages due. RCW 49.48.030. The Department of Labor and Industries was given concurrent administrative enforcement powers for claims of failure to pay wages. RCW 49.48.040-.070.
>
> The Legislature also established a remedy of exemplary damages if an employer willfully refuses to pay wages. RCW 49.52.050 provides, in pertinent part, that "[a]ny employer or officer, vice principal or agent of any employer" is guilty of a misdemeanor if that entity "[w]ilfully and with intent to deprive the employee of any part of his wages, [pays] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]" RCW 49.52.050(2). RCW 49.52.070 provides a corresponding civil remedy against the employer, its officers and agents[.]

(Footnotes omitted.)

Thus, the Legislature provided an employee could re-

cover for an employer's failure to pay compensation equivalent to the statutory minimum wage, or time and one-half at the employee's regular wage rate for overtime. Chapter 49.46 RCW. The employee could recover wages due at the termination of the employment relationship. Chapter 49.48 RCW. The employee could recover for wages withheld by an employer. Chapter 49.52 RCW. The import of this statutory scheme is that in circumstances where an employer paid no compensation whatsoever to an employee, the employee, if not otherwise exempt under the WMWA, could recover wages representing the difference between the statutory minimum wage and what was actually paid. RCW 49.46-.090(1). In addition, the employees could recover under chapter 49.52 RCW, whose remedies are not as limited as those of the WMWA. If the employer's refusal to pay was willful, there are no exemptions in chapter 49.52 RCW, as under the WMWA, based on the category of employee. Moreover, the employee's recovery is at the employee's regular rate of pay. *Schilling*, 136 Wn.2d at 159 (purpose of chapter 49.52 RCW "is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer[.]" (citation omitted)).

Here, the employees did not pursue their available remedies under chapter 49.52 RCW on appeal.[3] Instead, they confined their statutory claims to the WMWA. We review only their contentions under the WMWA in this appeal.

---

[3]Initially, the employees argued Boeing violated RCW 49.52.050(2) by willfully withholding wages for orientation. Their complaint stated:

> Willful failure to Pay for All Wages Earned. Boeing has willfully failed on a company-wide basis to pay the individual plaintiffs and the class the agreed wage or the applicable state minimum wage or overtime rates for work Boeing permitted them to perform. Boeing knew it was failing on a company-wide basis to pay for time plaintiffs spent at orientation sessions.

Clerk's Papers at 9. However, somewhere along the circuitous path of this case, the employees abandoned chapter 49.52 RCW and instead focused on the WMWA and various common law theories of recovery. Since chapters 49.48 and 49.52 RCW reinforce an employer's obligation to pay *above minimum* wage rates, the employees must properly plead and argue such a claim in order to recover their regular rate of pay, rather than the statutory minimum wage.

We now turn to the theories for recovery argued by the parties to us: (1) contract; (2) the WMWA; and (3) equity.

A. Contract Claims

■ The employees first argue the written provision requiring employees to attend orientation, without pay, is the result of a mutual mistake, requiring reformation of their contracts. A mutual mistake occurs "when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document." *Halbert v. Forney*, 88 Wn. App. 669, 674, 945 P.2d 1137 (1997). *Accord Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 903, 385 P.2d 45, 1 A.L.R.3D 876 (1963) (where the intention of an insurance company was identical to that of the child's parents, issuance of a policy naming only the parent as a named insured constituted a mutual mistake since the written agreement did not express the identical intentions of the parties). The rationale behind such a rule is that, but for the mistake, the parties would have executed the reformed contracts. *See Halbert*, 88 Wn. App. at 674. *Accord Stahl v. Schwartz*, 67 Wash. 25, 33, 120 P. 856 (1912) (citing *Kowalke v. Milwaukee Elec. Ry. & Light Co.*, 103 Wis. 472, 79 N.W. 762 (1899)).

The test for mutuality of mistake requires the mistaken fact be the underlying basis of the entire agreement and, when discovered, that the essence of the agreement is destroyed. *Childers v. Alexander*, 18 Wn. App. 706, 709, 571 P.2d 591 (1977). *Accord Chemical Bank v. Washington Pub. Power Supply Sys.*, 102 Wn.2d 874, 899, 691 P.2d 524 (1984) (mutual mistake occurs when the "mistake of both parties . . . as to a basic assumption on which the contract was made has a material effect on the agreed exchange[.]" (quoting RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981))). Here, the employees argue that both sides, when they formed the contracts, mistakenly believed attendance at the orientation sessions did not constitute work; thus, this mistake justifies reformation of the contracts. However, reformation is justified only if the parties' intentions were

identical at the time of the transaction. *See Childers*, 18 Wn. App. at 710. Although some of the employees may have expected compensation for attending orientation, this expectation was never communicated to Boeing. Additionally, it is clear from the record Boeing never intended to pay for orientation and communicated this fact to the employees.

Thus, there was no mistake of fact because, at the time of the transaction, the parties did not have the same intentions. To require Boeing to pay the employees for an activity it did not intend to compensate for would rewrite the contract. "Courts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and 'foist upon the parties a contract they never made.'" *Seattle Prof'l Eng'g Employees Ass'n*, 92 Wn. App. at 220 (citing *Childers*, 18 Wn. App. at 711 (quoting DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 11.6, at 746 (1st ed. 1973))). There was no mutual mistake here.

█ The employees next argue the trial court should have partially rescinded that portion of the contract requiring attendance at mandatory preemployment orientation sessions without pay. The employees contend this provision violates public policy because it is contrary to the WMWA. A contract may be partially rescinded if the offending provisions can be "lined out," while leaving the remainder grammatically meaningful and enforceable. *Wood v. May*, 73 Wn.2d 307, 313, 438 P.2d 587 (1968) (the so-called "blue pencil" test). Contrary to the employees' assertions, this test remains the rule rather than the exception in Washington. *Seattle Prof'l Eng'g Employees Ass'n*, 92 Wn. App. at 221. If we were to strike the provision at issue as the employees request, the contracts would still contain fixed starting dates for employment that excluded the mandatory preemployment orientation sessions; we would still have to modify the contracts to alter the starting date of employment. Again, we are "not at liberty, under the guise of construing the contract, to disregard contract language or revise the contract." *Seattle Prof'l Eng'g Employees*

*Ass'n,* 92 Wn. App. at 221 (citing *Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 654, 835 P.2d 1036 (1992)). We find the employees' arguments based on mutual mistake or rescission meritless.

## B. WMWA Claims

The parties raise three issues regarding the WMWA—the measure of damages for its violation, the applicability of exemptions under the statute, and the statute of limitations for claims under the WMWA.

The employees argue the Court of Appeals correctly held the WMWA entitles them to their regular or agreed rate of pay as compensation for the time spent at orientation. We disagree. The Court of Appeals and the employees are laboring under an erroneous interpretation of the law. In *United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 51, 925 P.2d 212 (1996), *review denied*, 133 Wn.2d 1021, 950 P.2d 478 (1997), the Court of Appeals mistakenly interpreted the WMWA when it wrote: "[u]nder that statutory scheme, an employee has a right to be paid either his or her regular wage or, when appropriate, overtime for all time worked." While the Court of Appeals was correct with regard to *overtime pay*, it erred as to *minimum wage claims*.

The WMWA directs an employer to pay an employee not less than *the minimum wage.* RCW 49.46.020.[4] Nowhere does it guarantee an employee be paid his or her *regular* wage, nor does it provide any remedy for an employer's failure to pay an employee for all time worked.[5] RCW 49.46.090(1) instead sets the statutory measure of damages

---

[4]Minimum wage *rates* are regulated by RCW 49.46.020, which requires an employer to "pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than four dollars and ninety cents per hour." Moreover, this chapter establishes "a minimum standard for wages and working conditions of all employees in this state[.]" RCW 49.46.120.

[5]By contrast, the statute, which also addresses overtime compensation, does direct payment at regular rates of pay for *overtime* work. *See* RCW 49.46.130(1); *see also* WAC 296-128-550 (salaried employees, unless specifically exempt, are entitled to one and one-half times the regular rate of pay for overtime).

for minimum wage violations by mandating that an employer who pays an employee less than the wages to which he or she is entitled shall be liable to that employee "for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court."[6] The WMWA does not assure payment of contractually agreed wage rates; it requires only that an employer pay *the minimum wage* for straight time. RCW 49.46.020(1). This is consistent with the concept of a *minimum wage* statute. The statute merely sets the floor below which the agreed rate cannot fall without violating the statute. Thus, the employees' recovery under the WMWA is limited to the statutory minimum wage.

As previously noted, RCW 49.52.050 and .070, not the WMWA, provide the statutory remedy for unpaid wages owing under a contract. Chapters 49.48 and 49.52 RCW reinforce contract obligations to pay *above minimum* wage rates. Although RCW 49.48.010 applies only to wages due upon termination, RCW 49.52.050 is not so limited. *See Pope v. University of Wash.*, 121 Wn.2d 479, 489, 852 P.2d 1055, 871 P.2d 590 (1993). In fact, the purpose of RCW 49.52.050 "is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay[.]" *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998). This is far broader than establishing the minimum wage and minimum standards of employment set out in the WMWA.

■ The employees next argue an employee is exempt from the WMWA only when paid on a salary basis, and because they were not compensated for attending the orientation sessions, they were not employed in an executive, administrative, or professional capacity; therefore, they do not fall within the exemption. The employees are

---

[6]Here, the employees were not paid at all for attending orientation; thus, no amount need be subtracted from their recovery.

correct that RCW 49.46.010(5)(c) specifically exempts "any individual employed in a bona fide executive, administrative, or professional capacity[.]" However, their concluding inference is incorrect. Contrary to the employees' assertions, Boeing's failure to pay those exempt employees for attending orientation does not abrogate their salaried status. In fact, "[f]ailure to pay the full salary in the initial or terminal week of employment is not considered inconsistent with the salary basis of payment." 29 CFR § 541.118(c).[7] Consequently, those executive, administrative, or professional employees who attended orientation without compensation remain exempt employees under WMWA. Thus, the trial court correctly held Boeing employees hired into executive, administrative, and professional positions were not entitled to statutory relief under the WMWA.

Finally, the parties disagree about the applicable statute of limitations for WMWA claims. The employees argue the three-year statute of limitations of RCW 4.16.080(2) applies. Boeing contends an action under the WMWA is subject to the two-year catch-all statute of limitations provided under RCW 4.16.130, citing *Cannon v. Miller*, 22 Wn.2d 227, 155 P.2d 500, 157 A.L.R. 530 (1945). In siding with the employees, the courts below held such a suit is governed by the three-year statute applicable to actions for "taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated[.]" RCW 4.16.080(2). *Accord Sorey v. Barton Oldsmobile*, 82 Wn. App. 800, 919 P.2d 1276 (1996), *review granted*, 131 Wn.2d 1001, 932 P.2d 643 (1997).

Although this holding seems contradictory to *Cannon*,

---

[7]No Washington authority has defined the "salary basis" element of the executive, administrative, or professional employee exemption to the MWA. *Tift v. Professional Nursing Servs., Inc.*, 76 Wn. App. 577, 583, 886 P.2d 1158, *review denied*, 127 Wn.2d 1007, 898 P.2d 309 (1995). "Because the MWA is based upon the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, federal cases and interpretations are deemed to be persuasive but not controlling upon Washington courts." *Id.* (footnote omitted) (citing *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 291, 745 P.2d 1 (1987)). *See also Xieng v. Peoples Nat'l Banks*, 120 Wn.2d 152, 531, 844 P.2d 389 (1993) ("in the absence of adequate state authority, federal authority is persuasive").

the trial court cited a host of cases that question *Cannon*'s continued viability. In particular, these cases addressed that portion of RCW 4.16.080(2), unaddressed in *Cannon*, regarding actions to vindicate rights. *See, e.g., State ex rel. Bond v. State*, 59 Wn.2d 493, 368 P.2d 676 (1962) (mandamus action to compel veteran's preference in state employment); *Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 718, 709 P.2d 793 (1985) (the relevant issue is whether the claim is for an injury to the rights of another irrespective of its basis in statutory law); *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wn. App. 607, 676 P.2d 545 (1984) (action under law against discrimination, chapter 49.60 RCW governed by three-, not two-, year statute); *Sorey*, 82 Wn. App. at 806 ("That proposition [that a claim based upon wage and hour statutes is not a contract claim] does not in any way diminish the argument that violation of a wage and hour statute is an invasion of a personal right subject to the three-year statute of limitations[.]"). The trial court concluded we had not addressed in *Cannon* the rights vindication language found in RCW 4.16.080(2).

■ We hold the three-year statute of limitations of RCW 4.16.080(3) applies to WMWA claims and take this occasion to overrule *Cannon. Cannon* not only failed to address the rights vindication language of RCW 4.16.080(2), it also failed to address the rationale we articulate here. Boeing did not contract with the employees to pay for orientation; therefore, the six-year statute of limitations set forth in RCW 4.16.040(1) for written contracts does not apply. Moreover, RCW 4.16.080(2), the statute the employees contend applies, has generally been applied to torts and tort-like claims, not labor and employment claims. We decline to adopt the employees' suggestion that a claim under the WMWA is akin to a civil rights action or tort action because this approach essentially eviscerates RCW 4.16.130. Any action in court upholds a right of some sort.

But we note that Washington case law has applied a three-year statute of limitations to claims involving unjust

enrichment. RCW 4.16.080(3).[8] *See Dam v. General Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958) (quoting *Halver v. Welle*, 44 Wn.2d 288, 295, 266 P.2d 1053 (1954)); *Cain v. Source One Mortgage Servs. Corp.*, 1999 WL 674776 (Wash. Ct. App. Aug. 30, 1999). The employees' WMWA claims are more analogous to claims for unjust enrichment than to tort claims. Although Boeing did not contract with the employees to pay for orientation, there is still a legal obligation imposed in law that an employer must pay an employee at least the minimum wage for work. And because its mandatory preemployment orientation sessions were deemed work, under the WMWA, Boeing is required to pay the employees not less than the minimum wage for that work, which it did not do. *See* RCW 49.46.020(1).

Thus, in instituting this action, the employees are in essence seeking recovery under an obligation imposed by law, and the WMWA, for Boeing's unjust enrichment (i.e., receiving the benefit of the employees' work without paying for the work.) As such, the employees' claims are subject to the three-year statute of limitations applicable to implied contracts, as provided under RCW 4.16.080(3).

C. Equitable Relief

Finally, the employees argue they are entitled to restitution for the work they performed for which Boeing was unjustly enriched. *Brader v. Minute Muffler Installation, Ltd.*, 81 Wn. App. 532, 537-38, 914 P.2d 1220, 922 P.2d 825 (1996) (the underlying objective of restitution is to prevent unjust enrichment by either party) (citing 5 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1107 (1964); RESTATEMENT (SECOND) OF CONTRACTS § 344(D) (1981))), *review denied*, 131 Wn.2d 1013, 932 P.2d 1255 (1997). *See King v. Clodfelter*, 10 Wn. App. 514, 522, 518 P.2d 206 (1974) (the measure of recovery is the reasonable value of services); *see also Dravo Corp. v. L.W. Moses Co.*, 6 Wn. App. 74, 91, 492 P.2d 1058 (1971) (courts look to the parties' agreement for evidence

---

[8]RCW 4.16.080(3) states: "Except as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument[,]" is subject to a three-year statute of limitations.

of the reasonable value of services). The Court of Appeals did not reach this issue because it found the employees had an adequate remedy under the WMWA. *Seattle Prof'l Eng'g Employees Ass'n*, 92 Wn. App. at 221-22.

■ But the trial court and the Court of Appeals also ruled those employees in professional, executive, and administrative jobs were exempted from coverage under the WMWA. This decision left the exempt employees without a remedy under the WMWA. However, as previously noted, these employees were not without an adequate remedy at law. They had a cause of action under chapter 49.52 RCW. To the extent the professional, executive, and administrative employees, exempt under the WMWA, had a remedy at law under chapter 49.52 RCW, they are not entitled to pursue a remedy in equity. *See Orwick v. City of Seattle*, 103 Wn.2d 249, 252, 692 P.2d 793 (1984) (citing *Tyler Pipe Indus., Inc. v. Department of Revenue*, 96 Wn.2d 785, 791, 638 P.2d 1213 (1982)). *See also Phelan v. Smith*, 22 Wash. 397, 401, 61 P. 31 (1900) ("Incompleteness and inadequacy of the legal remedy are what determine the right to the equitable remedy of injunction[.]").

## CONCLUSION[9]

Boeing concedes its mandatory preemployment orientation sessions constituted work for the employees. The employees chose to proceed under theories of contract, Washington wage-hour laws, and equity. In particular, we find the employees, not otherwise exempt from the WMWA, stated claims under the WMWA, chapter 49.46 RCW, limited to the statutory minimum wage. We note, however,

[9]Because our decision rests exclusively on the WMWA, we do not reach Boeing's contentions that the union-represented employees' claims are subject to federal preemption under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 or a requirement of exhaustion of collective bargaining agreement remedies. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *Livadas v. Bradshaw*, 512 U.S. 107, 121-22, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994). *See also Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 129, 839 P.2d 314 (1992); *Mutual Benefit Life*, 84 Wn. App. at 51; *Ervin v. Columbia Distrib., Inc.*, 84 Wn. App. 882, 888-89, 930 P.2d 947 (1997).

the employees had a viable, if unexplored, remedy for Boeing's failure to pay wages at the appropriate contractual rate for the mandatory preemployment orientation sessions in RCW 49.52.070. We affirm the decision of the trial court in this case.

GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS, and IRELAND, JJ., and BROWN, J. PRO TEM., concur.

Motions for reconsideration denied April 25, 2000.