[No. 58809-5-I. Division One. August 27, 2007.]

NICK ALMQUIST ET AL., *Appellants*, v. THE CITY OF REDMOND, *Respondent*.

---

[63] 155 Wn.2d at 129.

[64] 1995 WL 903165, at *36, 1995 GMHB LEXIS 384, at *105.

[65] *Viking*, 155 Wn.2d at 125-26.

*Jeffrey Julius* (of *Aitchison & Vick, Inc.*), for appellants.
*Greg A. Rubstello*, for respondent.

¶1 BECKER, J. — Having reached an impasse in bargaining, the Redmond Police Association and the city of Redmond went into statutory interest arbitration. The arbitration award included retroactive pay raises for the police employees. The employees sued the City on the ground that the retroactive pay became due as of the day of the arbitrator's award and should have been paid on the next payday after the award instead of two months later. Because the precise date when the retroactive payments were "due" was not fixed by statute, judgment, or contract, the trial court properly entered judgment for the City.

## FACTS

¶2 The Redmond Police Association had a collective bargaining agreement with the City. The agreement expired on December 31, 2001, with no successor agreement having been reached. Negotiations for a 2002-2004 contract reached an impasse over 14 issues. The Public Employment Relations Commission certified those issues to interest arbitration under RCW 41.56.450. Before the hearing, the parties resolved all but 3 of the issues. The unresolved issues included employee wage rates for all three years of the contract.

¶3 Interest arbitration for units of uniformed personnel is conducted under a statute that recognizes the need for "an effective and adequate alternative means of settling disputes" in order to avoid strikes. RCW 41.56.430. It is used to determine the terms of the contract between the parties when they cannot negotiate an agreement, and it "results in a new agreement." *City of Bellevue v. Int'l Ass'n of Firefighters, Local 1604*, 119 Wn.2d 373, 376, 831 P.2d 738 (1992). An interest arbitration award is not subject to appeal to the Public Employment Relations Commission. WAC 391-55-245. It is "final and binding upon both parties," subject only to superior court review "solely upon the question of whether the decision of the panel was arbitrary or capricious." RCW 41.56.450. The decision of the arbitration panel may be enforced in superior court. RCW 41.56.480.

¶4 The interest arbitration panel conducted a hearing in October 2003. The chairperson filed a written decision on March 3, 2004; the parties received it two days later. The decision awarded a wage increase of 3.51 percent retroactive to January 1, 2002; another wage increase of 1.5 percent retroactive to January 1, 2003; and a wage increase of 0.9 percent retroactive to January 1, 2004.

¶5 After receiving the decision, the Association corresponded with the City's attorneys by e-mail about preparing a collective bargaining agreement that both sides would then sign. The Association emphasized the desire of the employees to have the retroactive payments made as soon as possible. The bargaining representatives began the process of incorporating the terms of the arbitration decision into a collective bargaining agreement. By April 2, 2004, issues about contract language had been resolved and a final agreement had been produced. The mayor was expected to sign for the City after receiving approval from the city council. The council was expected to approve the agreement at their meeting on May 4. On April 2, the employees asked to have the agreement presented to the city council at their April 9 meeting. They also asked why the retroactive payments were being "delayed" in light of RCW 41.56.450, which makes the written determination by the chair of the arbitration panel final and binding on the parties.[1]

¶6 The City decided to process the wage increases right away, without waiting for formal council approval of the collective bargaining agreement. The City's scheduled pay dates were on the 10th and 25th of each month. The increased pay rates going forward were set to begin with the April 25, 2004, paycheck. Calculation of back pay was more complex and had to be done manually by the payroll department for each of the 76 employees, taking into account overtime pay, longevity, "other special pay," and a "retroactive dependent medical premium deduction for

---

[1] Clerk's Papers at 132 (April 2, 2004, e-mail from Association's lawyer).

2003 and 2004."[2] The City made the retroactive payments on May 25, 2004—the sixth payday after the arbitration award. The retroactive payments for all 76 employees totaled $399,799.72.

¶7 The new collective bargaining agreement between the City and the Association became final on June 8, 2004, with the signatures of both parties' representatives. The agreement was effective from January 1, 2002, to December 31, 2004.

¶8 In December 2004, the employees sued the City, alleging that the retroactive wages awarded in the March 3 decision should have been paid no later than the payday on March 25, 2004. The trial court dismissed the suit upon finding that the interest arbitration award "did not create an immediate obligation to pay money to the employees."[3] The court found that such an obligation "had to be created through entry of a judgment which was never done or a collective bargaining agreement which was done in June 2004, after the wages had been paid."[4] The employees appeal.

¶9 The facts are undisputed. Only legal questions remain. Our review is de novo. *Dep't of Corr. v. Fluor Daniel, Inc.*, 160 Wn.2d 786, 789, 161 P.3d 372 (2007).

¶10 The centerpiece of the employees' argument is an administrative rule that requires all "wages due" to be paid at least once a month on established regular paydays:

> All wages due shall be paid at no longer than monthly intervals to each employee on established regular pay days. To facilitate bookkeeping, an employer may implement a regular payroll system in which wages from up to seven days before pay day may be withheld from the pay period covered and included in the next pay period.

---

[2] Clerk's Papers at 500 (April 9, 2004, e-mail from City's lawyer).

[3] Clerk's Papers at 595 (Conclusion of Law 2.1).

[4] Clerk's Papers at 595 (Conclusion of Law 2.1).

WAC 296-126-023; WAC 296-128-035. The employees contend the City violated this rule by waiting two months after the payday on March 25, 2004, to issue checks for back pay. They contend the violation entitles them to damages, interest, and attorney fees available under three of Washington's wage and hour statutes: the minimum wage act (chapter 49.46 RCW), the wage payment act (chapter 49.48 RCW), and the wage rebate act (chapter 49.52 RCW). In particular they allege that the City's failure to pay by March 25, 2004, amounted to a willful and unlawful withholding of the entire retroactive payment, $399,799.72. Thus, they argue they were entitled to judgment for twice that amount under RCW 49.52.070.

¶11 Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsys., Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582 (2000). The "comprehensive scheme" of wage and hour statutes shows the legislature's "strong policy in favor of payment of wages due employees." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157, 961 P.2d 371 (1998). Under the statutes cited by the employees,

> the Legislature provided an employee could recover for an employer's failure to pay compensation equivalent to the statutory minimum wage, or time and one-half at the employee's regular wage rate for overtime. Chapter 49.46 RCW. The employee could recover wages due at the termination of the employment relationship. Chapter 49.48 RCW. The employee could recover for wages withheld by an employer. Chapter 49.52 RCW.

*Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 830-31, 991 P.2d 1126 (2000). The statutes provide for recovery of attorney fees in successful actions to recover wages due. *See* RCW 49.46.090(1); RCW 49.48.030; RCW 49.52.070. If the employer's refusal to pay was willful, there are no exemptions in chapter 49.52 RCW. *Boeing*, 139 Wn.2d at 831. A willful failure to pay can be a gross misdemeanor and can make an employer liable "for twice the amount of the wages unlawfully rebated or withheld."

RCW 49.52.070. The Department of Labor and Industries has administrative enforcement powers for claims of failure to pay wages. *Schilling*, 136 Wn.2d at 159 (citing RCW 49.48.030-.070).

¶12 The payment interval rule recognizes that employers may "have some lag time in paying their employees," *Clark v. City of Kent*, 136 Wn. App. 668, 677, 150 P.3d 161 (2007), but it ensures that the lag time is not prolonged indefinitely to the detriment of the employees. Under the rule, "wages due" must be paid on regular paydays set at no longer than monthly intervals.

¶13 The retroactive pay raises awarded in the interest arbitration were wages, i.e., "compensation due . . . by reason of employment." *See* RCW 49.46.010(2); *see also Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 861, 93 P.3d 108 (2004) (retroactive payments ordered by arbitrator and incorporated into collective bargaining agreement were "wages" because they were tied to hours worked). The question is whether those wages became "due" in the sense that would trigger the payment interval rule.

¶14 The retroactive pay raises provided additional compensation to the employees for hours worked in pay periods as far back as 2002, for which the pay dates had long passed. The employees do not, however, argue that the retroactive wages became "due" in those earlier years. Rather, they argue that all the retroactive wages awarded by the interest arbitration panel became collectively due on the date of the award.

¶15 The statute states that the arbitration panel's written decision "shall be final and binding upon both parties, subject to review by the superior court" and that the decision "may be enforced at the instance of either party" in superior court. RCW 41.56.450, .480. The statute does not specifically fix a due date.

¶16 The employees contend the date of the award became fixed as the due date by *City of Moses Lake v. International Ass'n of Firefighters, Local 2052*, 68 Wn. App.

742, 749, 847 P.2d 16 (1993). In that case, the city of Moses Lake and its fire fighters had received an interest arbitration award establishing a higher rate of pay and making the new pay rate retroactive to the beginning of the year. *Firefighters*, 68 Wn. App. at 744. Moses Lake sought review by complaint in superior court. The superior court concluded the award was not arbitrary or capricious and entered judgment against the city. The fire fighters requested prejudgment interest. The trial court denied this request. On appeal by the city of Moses Lake, the superior court's decision upholding the arbitration award was affirmed. On the fire fighters' cross-appeal, the superior court's order denying prejudgment interest was reversed. The entirety of the court's analysis of the prejudgment interest issue is contained in the following paragraph:

> Prejudgment interest is allowable when the amount claimed is liquidated, *i.e.*, "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968). *See also Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986). The salary increase meets the definition of liquidated. *As of May 31, 1991, the date of the award, the City was under a duty to raise the firefighters' salaries in the amount specified, subject only to review as provided in RCW 41.56.450. Contrary to the City's argument, the signing of a collective bargaining agreement in accordance with that award is not a prerequisite to the legal obligation to abide by the award.*

*Firefighters*, 68 Wn. App. at 749 (some emphasis added).

¶17 *Firefighters* does not compel the conclusion that retroactive payments become "due" as of the date of the arbitration award. The discussion in *Firefighters* does not specifically mention retroactive pay, and there was no issue about the application of the payment interval rule. What the court decided is that the fire fighters were entitled to prejudgment interest, an issue that typically arises only in a case where there is a judgment. A binding arbitration award is not the equivalent of a judgment. *Fluor Daniel, Inc.*, 160 Wn.2d at 792-93.

¶18 In this case, unlike in *Firefighters*, the City did not resist its obligation to abide by the award. Neither party sought review of the arbitration award, and no judgment enforcing it had to be entered.

¶19 The employees are concerned that unless the phrase "final and binding" in RCW 41.56.450 is interpreted as making retroactive raises "due" as of the date of the arbitration award, a municipality will have no incentive to be prompt in issuing checks for retroactive pay. This concern is not well founded. Employees have at least two means at their disposal to expedite the payments. The first is to pursue an enforcement action under RCW 41.56.480. The second and likely more preferable means is to contract for a due date.[5] This case shows that the calculation of back pay can be more time-consuming than simply putting a pay increase into effect going forward. The amount of time needed could vary from one jurisdiction to another. The unit of uniformed personnel and the employer are in the best position to assess how much time is reasonable in their particular circumstances and to place a limit on that time by contract.

¶20 Here, it does not appear that the City and the Association bargained for a specific due date for retroactive payments. The old collective bargaining agreement did not address how the due date for retroactive payments would be established in the event of an interest arbitration award including such payments. The due date was not certified into interest arbitration as an issue on which the parties had reached impasse in their bargaining for a new agreement. The issue of the due date was not addressed in the arbitrator's award.

¶21 When the award was issued, the City proceeded to calculate back pay due to each employee and issued the checks on May 25, 2004, the sixth payday after the award. Without a due date fixed by statute, judgment, or contract,

---

[5] The City suggests that the unfair labor practice jurisdiction of the Public Employment Relations Commission provides yet another avenue to address foot-dragging.

we cannot say the City was obligated to issue the checks on any earlier date.

¶22 In summary, the trial court correctly concluded that the interest arbitration award did not create an immediate obligation to pay money to the employees. The employees have cited no authority demonstrating that the retroactive pay raises awarded by the arbitration decision were due at any time before the City paid them. As there was no unlawful delay, the employees have not shown a violation of the payment interval rule or the wage payment statutes.

¶23 Affirmed.

GROSSE and ELLINGTON, JJ., concur.

Review granted at 163 Wn.2d 1039 (2008).