

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 1 0 2018

Fairhurst, CJ.
**CHIEF JUSTICE**

This opinion was filed for record

at 8:00am on May 10, 2018

**SUSAN L. CARLSON**
**SUPREME COURT CLERK**

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) ) | No. 94229-3 |
| | ) | En Banc |
| MARIANO CARRANZA and ELISEO MARTINEZ, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Filed: MAY 1 0 2018 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| DOVEX FRUIT COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

YU, J. — The Washington Minimum Wage Act (MWA), chapter 49.46 RCW, requires employers to compensate employees for their work. This case asks us to apply that general principle to the specific context of agricultural workers who are paid on a piece-rate basis for piece-rate picking work by answering the

following two questions, which were certified to us by Judge Mendoza of the United States District Court for the Eastern District of Washington:

> *A.* Does Washington law require agricultural employers to pay their pieceworkers for time spent performing activities outside of piece-rate picking work (e.g., "Piece Rate Down Time" and similar work)?
> *B.* If the answer to the above question is "yes", how must agricultural employers calculate the rate of pay for time spent performing activities outside of piece-rate picking work (e.g., "Piece Rate Down Time" and similar work)?

Order Certifying Questions & R. to Wash. Supreme Ct. & Staying Deadlines & Proceedings, *Carranza v. Dovex Fruit Co.*, No. 2:16-cv-00054-SMJ at 2 (E.D. Wash. Mar. 3, 2017) (Order Certifying Questions).

The answer to the first certified question is yes. The plain language of the MWA requires employers to pay their adult workers "at a rate of not less than [the applicable minimum wage] *per hour*." RCW 49.46.020(1)-(3) (emphasis added). There is no exception, other statutory provision, or judicial or executive interpretation that allows employers to evade this plain language in the context presented. Therefore, agricultural workers may be paid on a piece-rate basis only for the hours in which they are engaged in piece-rate picking work. Time spent performing activities outside the scope of piece-rate picking work must be

compensated on a separate hourly basis.[1] We thus reject Dovex Fruit Company's argument that it need ensure only that each worker's average *weekly* compensation is equal to at least minimum wage.

The parties disagree about which, if any, tasks are outside the scope of piece-rate picking work. *See* Pls.' Opening Br. on Certified Questions at 3-4; Def. Dovex Fruit Co.'s Answering Br. at 2-3. Judge Mendoza described this category of work as "not explicitly accounted for through piece-rate compensation." Order regarding Certification Questions to Wash. Supreme Ct. at 7. We recognize that what is accounted for by the piece rate is a factual dispute beyond the scope of the

---

[1] Contrary to the dissent's assertion that we have "define[d] away the certified question" and "recast[] all work except piece-rate picking work as hourly work," dissent (Stephens, J.) at 5, 4, Judge Mendoza explained the issue as follows:

> The Court is unpersuaded by Defendant's framing of the question here as a potential "double-payment" to piece-rate workers. The issue is not whether Plaintiffs seek to be paid twice for work that is allegedly already compensated through the "averaging framework." Rather, the question is how Washington law accounts for work performed by piece-rate workers that is not explicitly accounted for through piece-rate compensation (e.g., "Piece rate Down Time" and similar work). As the *Lopez Demetrio* [*v. Sakuma Bros. Farms*, 183 Wn.2d 649, 355 P.3d 258 (2015)] court found "[t]he piece rate is the only compensation the Workers receive." *Lopez Demetrio*, 355 P.3d at 261. Indeed, if the worker "is not picking . . ., the picker is not earning money." *Id.* (citing a representative for the defendant in that case). Moreover, it is not clear that the averaging framework governs in the agricultural context. Further, neither party points to authorities that definitively resolve the question of how non-piece-rate work (e.g., "Piece rate Down Time" and similar work) is or should be calculated and paid to pieceworkers. Neither has this Court been able to find such legal authority. And whether the averaging framework, or another compensation scheme, applies to these workers is a question of law for the Washington Supreme Court to consider and answer.

Order regarding Certification Questions to Wash. Supreme Ct. at 7-8 (citations and footnote omitted).

certified question presented. Discovery is ongoing, and we defer resolution of the question to the district court.

We answer the second certified question consistent with the parties' position. The rate of pay for time spent performing activities outside of piece-rate picking work must be calculated at the applicable minimum wage or the agreed rate, whichever is greater.[2]

## BACKGROUND

This case began in 2016 when the two named plaintiffs filed this putative class action lawsuit against Dovex on behalf of Dovex's seasonal and migrant agricultural employees. Each summer, Dovex employs hundreds of seasonal and migrant workers, many of whom speak limited English, to harvest apples, pears, and cherries in Dovex's orchards. The plaintiffs allege that Dovex violated state and federal law by willfully refusing to pay wages and failing to "pay minimum wage, provide paid rest breaks, maintain accurate and adequate time and wage records, pay wages when due, [and] provide accurate statements of hours worked." Order Certifying Questions at 1.

---

[2] Prior to oral argument, the plaintiffs filed a motion to strike a portion of Dovex's answer to amici that addresses for the first time whether this court's decision should be applied retroactively. We passed the motion to the merits and now grant. The amici briefs do not raise retroactivity, and RAP 10.3(f) provides that an "answer to a brief of amicus curiae should be limited solely to the new matters raised in the brief of amicus curiae."

The only claim relevant to the certified questions presented here relates to agricultural workers who are paid on a piece-rate basis, which is a specified amount of money per bin of picked apples or pears, or per "lug" of picked cherries. Pls.' Opening Br. on Certified Questions at 3. Such workers' rate of pay is based on how many pieces of fruit are actually picked during a pay period.

The plaintiffs allege that Washington law requires Dovex to compensate them separately and in addition to the agreed upon piece rate for the time they spend on tasks outside of piece-rate picking. They agree that the piece rate compensates them for some tasks that are not strictly picking fruit, including going up and down ladders, moving between trees, and emptying fruit bins. Pls.' Reply Br. on Certified Questions at 2. However, they argue they have a right to separate payment for time spent on other tasks such as transporting ladders to and from the company trailer, traveling between orchards and orchard blocks, attending mandatory meetings or trainings, and storing equipment and materials. Pls.' Opening Br. on Certified Questions at 3.

Dovex responds that the plaintiffs are already fully compensated by the piece rate because all of the tasks they perform are part of piece-rate picking work. Def. Dovex Fruit Co.'s Answering Br. at 14. Although Dovex admits that it now pays its employees additional compensation for time spent on some nonpicking activities, it is undisputed that during the relevant time period Dovex did not.

5

Stipulation of Facts for Questions Certified to Wash. Supreme Ct., *Carranza v. Dovex Fruit Co.*, No. 2:16-cv-00054-SMJ at 3, 4 (E.D. Wash. Feb. 10, 2017).

The certified questions present a narrow issue that limit our conclusion to the context of agricultural workers.[3] We must decide whether the pay structure used by Dovex is prohibited by the MWA and, if so, the rate of pay at which the workers' time spent on tasks outside of piece-rate picking work must be compensated. We are not asked to decide which, if any, tasks are outside of piece-rate picking work in this case, and we do not attempt to do so. The scope of piece-rate picking is a question of fact, not law, and is therefore appropriately left to the district court.

## ISSUES

1. "Does Washington law require agricultural employers to pay their pieceworkers for time spent performing activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)?" Order Certifying Questions at 2.

---

[3] The dissent rewrites the certified question to address a much broader issue than the one before this court. The dissent frames the issue as "whether the MWA allows piece-rate pay to subsume nonproduction work time." Dissent (Stephens, J.) at 14 n.5; *see also id.* at 2. We do not opine on the legitimacy of a compensation structure similar to Dovex's when used outside the context of agricultural work.

2.    "If the answer to the above question is 'yes', how must agricultural employers calculate the rate of pay for time spent performing activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)?" *Id.*

### ANALYSIS

*First Certified Question*

The MWA "establish[es] minimum standards of employment within the state of Washington," including setting the minimum wage. RCW 49.46.005(1). Thirty years after its enactment, the MWA was expanded to apply to agricultural workers by the will of the people pursuant to their initiative power.[4] LAWS OF 1959, ch. 294, § 1(5)(a); LAWS OF 1989, ch. 1, § 1(5)(a).

The MWA states that "every employer shall pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than [the applicable minimum wage] *per hour.*" RCW 49.46.020(1)-(3) (emphasis added). The central issue here is our interpretation of the phrase "at a rate of not less than [the applicable minimum wage] per hour" and its narrow application to agricultural workers who are paid on a piece-rate basis.

The parties correctly agree that the MWA requires payment of at least minimum wage for all hours worked and that the time Dovex's employees spend

---

[4] While the MWA now applies to agricultural workers, they are expressly excluded from the regulation governing minimum wage compensation for other workers paid on a commission or piece-rate basis. WAC 296-126-001(2)(c), -021.

on the tasks allegedly outside of piece-rate picking work are hours worked. But, as reflected in the certified questions, they dispute what an employer must do to comply with its duty to pay its workers at least minimum wage per hour.

The plaintiffs contend that the MWA requires compensation for each hour actually worked, such that time spent on activities outside of piece-rate picking work must be compensated on a separate hourly basis. Dovex, meanwhile, contends that its duty is limited to ensuring that when a worker's total weekly compensation is averaged across all hours worked on all tasks in a week, the resulting average hourly rate is at least equal to minimum wage. Dovex's approach is referred to as "workweek averaging."

As always in cases of statutory interpretation, we look first to the plain language of the statute to discern the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). In this case, the MWA's plain language unambiguously supports the plaintiffs' view. The statute does not restrict employers to a specific compensation structure, but it does require an employer to pay its employees at least minimum wage "per hour." RCW 49.46.020(1)-(3). The legislature's choice of the words "per hour" evinces an intent to create a right to compensation for each individual hour worked, not merely a right to workweek averaging.

This conclusion is well illustrated by a comparison of the plain language of the MWA and the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, on which the MWA is largely based. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 868, 281 P.3d 289 (2012). The FLSA provides that "[e]very employer shall pay to each of his employees . . . in any *workweek* . . . wages at" not less than minimum wage. 29 U.S.C. § 206(a) (emphasis added). Some federal courts have held that this provision allows workweek averaging. *See, e.g., Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884 (9th Cir. 2017); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). These holdings cannot apply to the MWA because our legislation states "per hour," rather than "in any workweek."[5] Therefore, the MWA's plain language requires us to conclude that employees have a per hour right to minimum wage.

In addition to the statute itself, analogous case law further supports the plaintiffs' view. We agree with Dovex that our decision in *Lopez Demetrio v.*

---

[5] The dissent rests its analysis on the mistaken assumption that we are bound by interpretations of the FLSA. Dissent (Stephens, J.) at 10. We are not. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000). The dissent then dismisses the importance of the phrase "in any workweek," found in the FLSA and not the MWA, but we must give effect to every word when engaging in statutory interpretation. *City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 102, 758 P.2d 480 (1988). The dissent's approach amounts to a novel way of interpreting the plain language of the MWA without any citation to authority. Dissent (Stephens, J.) at 14.

*Sakuma Bros. Farms*, 183 Wn.2d 649, 355 P.3d 258 (2015), did not directly address the specific issue of whether and how workers paid on a piece-rate basis should be paid for time spent on activities outside of piece-rate picking work. Def. Dovex Fruit Co.'s Answering Br. at 8-13. However, precedent from comparable situations has established that pursuant to "the MWA, employees are entitled to compensation for *regular hours worked*." *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 47, 169 P.3d 473 (2007) (emphasis added). Without an applicable exception, time spent on job duties that are not otherwise compensated must be compensated on a per hour basis. These principles apply here.

For instance, similar to the plaintiffs' claim in this case that they are not paid for time spent traveling between orchards, the plaintiffs in *Stevens* were technicians who were not compensated "for time they spent driving company trucks from their homes to the first jobsite and back from the last jobsite." *Id.* at 44. We concluded that this time must be compensated as hours worked in accordance with the MWA. *Id.* at 49-50.

Also similar to the plaintiffs' claim in this case that they are not paid for time spent at mandatory meetings and trainings is the claim of the plaintiffs in *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, that they were required to attend "a 'pre-employment orientation' session" without compensation. 139 Wn.2d 824, 827, 991 P.2d 1126, 1 P.3d 578 (2000) (*SPEEA*). We accepted "Boeing's

concession that its mandatory pre-employment orientation sessions constituted

work" and focused principally on "the remedy available under Washington law"

because the workers were entitled to compensation. *Id.* at 829.

The Ninth Circuit has similarly concluded that the MWA provides a per

hour right to minimum wage. In *Alvarez v. IBP, Inc.*, hourly workers at IBP Inc.'s

city of Pasco meat processing plant sought compensation for the time it took to

perform tasks, including "gather[ing] their assigned equipment, don[ning] that

equipment in one of the Pasco plant's four locker rooms, and prepar[ing] work-

related tools before venturing to the slaughter or processing floors," and then

repeating the process in reverse at the end of the workday. 339 F.3d 894, 898 (9th

Cir. 2003). The court compared the MWA and the FLSA and considered this

court's case law as well as the Department of Labor and Industries' (DLI)

interpretations and regulations. *Id.* at 912-13. It specifically rejected using

workweek averaging to measure compliance with the MWA and instead held that

the workers' time was compensable because the MWA provides a per hour right to

compensation for hourly employees.[6] *Id.* at 913.

---

[6] The dissent is mistaken when it states *Alvarez* supports its position that workweek averaging is permissible for workers paid by the piece because it dismisses the role of WAC 296-126-021 in the court's analysis. Dissent (Stephens, J.) at 19-20. The Ninth Circuit noted that DLI regulations "permit use of the work-week measure only for particular employment categories." *Alvarez*, 339 F.3d at 912. As discussed in greater detail, *infra* pp. 14-15, just as in *Alvarez*, there is no relevant regulation that allows for workweek averaging for agricultural workers paid by the piece.

Dovex nevertheless argues that its pay structure is permissible because each *week*, a worker's total piece-rate compensation divided by his or her total hours worked equals at least the applicable minimum wage. Def. Dovex Fruit Co.'s Answering Br. at 21-41. This argument misses the point. As we noted in *Lopez Demetrio*, a case that considered an analogous piece-rate compensation structure, "'[I]f the picker is not picking . . . , the picker is not earning money.'" 183 Wn.2d at 653 (alterations in original). Workweek averaging ignores the per hour right to compensation that the MWA imposes by making it possible to conceal the fact that an employer is not compensating its employees for all hours worked because payment for *some* hours of piece-rate picking work is spread across *all* hours worked. This interpretation places few limitations on an employer. Despite protestations from the dissent, nothing would prevent an employer from ordering its workers to clean the toilets without further pay after completing their piece-rate picking work for the day. Dissent (Stephens, J.) at 5. However, no applicable interpretive case law or regulations justify allowing workweek averaging in this context.

To support its right to structure a flexible compensation system, Dovex looks to *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 531, 7 P.3d 807 (2000). Def. Dovex Fruit Co.'s Answering Br. at 17-18. The general principle that flexible compensation structures are permissible is not in question. However, *Inniss*

12

considered only the legality of an employer's method of calculating a specific payment structure for overtime hours pursuant to RCW 49.46.130(1). 141 Wn.2d at 523. It thus interpreted a different provision of the MWA that is not at issue in this case, and it did so by relying on comparable provisions and regulations of the FLSA, which are also inapplicable here. *Id.* at 523-29. And as noted above, relying on the FLSA in this case is inappropriate because the MWA and FLSA provisions at issue here clearly differ in their plain language.

Dovex and the dissent also mischaracterize our precedent when they argue that *Lopez Demetrio* already endorsed using workweek averaging to measure compliance with the MWA. Def. Dovex Fruit Co.'s Answering Br. at 23, 39-41; dissent (Stephens, J.) at 22-24. In *Lopez Demetrio*, we were asked the limited question of whether WAC 296-131-020(2) requires an agricultural employer to pay its workers compensated on a piece-rate basis separately for their mandatory rest breaks. 183 Wn.2d at 654. We answered yes and noted that workweek averaging is an acceptable method of calculating an employee's rate of pay for rest break periods. *Id.* at 660-61. However, unlike in *Lopez Demetrio*, this case asks us to evaluate MWA compliance in the context of hours worked, not rest breaks. It is undisputed that time spent on work outside the scope of piece-rate picking is work and, pursuant to the MWA, is hourly work. *Lopez Demetrio* does *not* undercut the

13

MWA's plain requirement that agricultural workers are entitled to hourly compensation for hourly work.

Dovex and Justice Stephens' dissent further argue that their statutory interpretation is supported by administrative regulations and policies. The dissent erroneously asserts that "DLI has consistently interpreted RCW 49.46.020(1) to allow for workweek averaging to determine minimum wage compliance under piece-rate compensation plans." Dissent (Stephens, J.) at 15. As correctly pointed out in the amicus brief of the Washington State Attorney General, DLI *has not* interpreted the MWA as it applies to agricultural workers paid by the piece. Amicus Br. of Att'y Gen. of Wash. at 8.

There is no regulation that allows workweek averaging in the context of agricultural workers paid by the piece. Instead, Dovex and Justice Stephens' dissent give great deference to DLI's interpretation of the MWA that *does not apply* to agricultural workers. WAC 296-126-021 arguably allows workweek averaging when an employer pays its workers on a piece-rate basis. However, that regulation has no role here because agricultural workers are expressly exempt, as Dovex and the dissent admit. WAC 296-126-001(2)(c); Def. Dovex Fruit Co.'s Answering Br. at 37 (noting that the regulation applies "in the non-agricultural piece rate context"); dissent (Stephens, J.) at 15 n.6. The dissent buries in a footnote its acknowledgement that agricultural workers are exempt, and then

14

illogically concludes the court should still adhere to the interpretation. Dissent (Stephens, J.) at 15 n.6. Agricultural workers are regulated by different regulations, chapter 296-131 WAC, which do not include any regulation allowing for compensation calculated by workweek averaging for adult agricultural workers.[7]

Not only is there no applicable regulation, but there also is no applicable administrative policy.[8] Dovex and the dissent attempt to rely on a nonbinding DLI policy that arguably endorses workweek averaging. Def. Dovex Fruit Co.'s Answering Br. at 36-37 (quoting Administrative Policy ES.A.3, at 2 (effective July 15, 2014)); dissent (Stephens, J.) at 15. But the portion of the policy relevant to workers paid by the piece purports to interpret WAC 296-126-021, which, again, expressly exempts agricultural workers. WAC 296-126-001(2)(c). Furthermore, even if it were applicable to agricultural workers paid by the piece, administrative policies "[have] no force or effect as a law *or regulation.*" *Stevens*, 162 Wn.2d at 54 (Madsen, J., concurring) (emphasis added). While the level of deference owed to regulations is an issue of ongoing debate, administrative policies do not even

---

[7] The dissent places great emphasis on a regulation relating to minimum wage compliance for agricultural workers paid by the piece who are minors, WAC 296-131-117(1). Dissent (Stephens, J.) at 15 n.6. The certified questions do not concern minor agricultural workers.

[8] Dovex also claims a DLI handout is interpretative guidance in support of its position, but the handout was removed from the agency's website years ago. Dovex Fruit Co.'s Statement of Additional Auths. at 1.

have the force of regulations, and deference to such policies is inappropriate because "[t]his court has the ultimate authority to interpret a statute." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846 (2007).

Finally, "'[s]tatutes should be interpreted to further, not frustrate, their intended purpose.'" *Id.* at 712 (alteration in original) (quoting *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994)). Remedial legislation like the MWA "is given a liberal construction" in accordance with the legislature's intent of protecting employees. *Anfinson*, 174 Wn.2d at 870. Liberally construing the MWA favors interpreting its minimum wage mandate as providing employees with a right to hourly compensation for hourly work. The dissent erroneously claims that "[t]his is not a case about unpaid workers or unpaid time" but its approach is at odds with the purpose of the MWA and is a clear admission that its interpretation favors employers over workers. Dissent (Stephens, J.) at 19.

Dovex and Justice Stephens' dissent's suggested approach of using workweek averaging to measure compliance with the MWA is also inconsistent with Washington's "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz*, 140 Wn.2d at 300. It is unquestionable that no legislation has attempted to refute this history or this state's commitment to it. However, Dovex and the dissent's interpretation risks doing just that for seasonal and migrant agricultural workers, a group that is historically comprised of

vulnerable workers who often face language barriers, have limited education, and endure difficult working conditions, and for whom employment protections have been hard fought. *See generally* Br. of Amicus Curiae Familias Unidas por la Justicia et al.; Amicus Curiae Br. of United Farm Workers of Am. & Migrant Clinicians Network.

In closing, we note that the dissent contends we have relied on California courts' interpretation of their state minimum wage act in order to interpret the MWA. Dissent (Stephens, J.) at 26-31. We do not cite, rely on, or adopt California law in reaching our conclusion.

We therefore hold that agricultural workers who are paid on a piece-rate basis are entitled to separate hourly compensation for the time they spend performing tasks outside of piece-rate picking work. Despite the dissent's effort to paint this holding as "extend[ing] far beyond this case" and "seriously undermin[ing] the piece-rate payment system as a viable compensation plan," our decision today is limited, as it must be, to agricultural workers. *Id.* at 24-25. The answer to the first certified question is yes.

*Second Certified Question*

Because we answer the first certified question in the affirmative, we must determine how an employer must calculate the rate of pay for the time its agricultural employees who are compensated on a piece-rate basis spend

17

performing tasks outside of piece-rate picking work. We answer the second certified question consistent with the answer requested by the parties. It is undisputed that the employees are entitled to at least minimum wage because "[t]he MWA 'sets the floor below which the agreed rate cannot fall without violating the statute.'" *Lopez Demetrio*, 183 Wn.2d at 660 (quoting *SPEEA*, 139 Wn.2d at 835). It is also undisputed that an employer can enter into a contractual agreement to pay its workers at a different rate that is above minimum wage. Therefore, an employer must pay its workers minimum wage or a contractually agreed upon rate, whichever is higher, for time spent on activities outside the scope of piece-rate picking.

## CONCLUSION

The answer to the first certified question is yes. The MWA provides that an agricultural worker who is paid on a piece-rate basis for piece-rate picking work must be paid separate hourly compensation for the time he or she spends performing tasks outside of piece-rate picking work. The answer to the second question is that the separate rate of pay must be at least minimum wage or the agreed upon rate, whichever is higher.

_____
Fairhurst, J.

WE CONCUR:

_____

_____
Wiggins, J.

_____
Madsen, J.

_____
González, J.

_____
Gordon McCloud, J.

No. 94229-3

FAIRHURST, C.J. (dissenting)—I disagree with the majority because I believe the answer to the first certified question is no. I agree with Justice Stephens' interpretation of the plain language of RCW 49.46.020 and join Sections I.B and I.D of her opinion.

I am not signing on to the other sections in Justice Stephens' opinion for a handful of reasons, summarized here. In Section I.A, Justice Stephens believes we must "understand[] what is meant by 'activities outside of piece-rate picking work.'" Dissent (Stephens, J.) at 2. I agree with Justice Yu's reasoning that this "is a factual dispute beyond the scope of the certified question." Majority at 3.

In Section I.C, Justice Stephens supports her plain meaning interpretation with administrative policies and guides from the Department of Labor and Industries (DLI). But since the plain language of the statute is unambiguous, our interpretive inquiry is at an end. *State v. Armendariz*, 160 Wn.2d 106, 110-11, 156 P.3d 201 (2007); *see also Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187

1

Wn.2d 460, 474, 387 P.3d 670 (2017) ("If a statute is ambiguous, an agency's promulgated rules help our interpretation."). Because consideration of these sources is unnecessary, I refrain from making a conclusive determination about DLI's position. Lastly, in Part II, Justice Stephens argues that the majority radically changes Washington law, silently embraces the California Labor Code, and creates unnecessary legal tasks for DLI and the legislature. While I agree that the majority incorrectly interpreted RCW 49.46.020, I refrain from making these characterizations about the opinion or its potential impacts.

Fairhurst, C.J.

*Carranza v. Dovex Fruit Co.*
(Stephens, J., dissenting)

No. 94229-3

STEPHENS, J. (dissenting)—Washington's Minimum Wage Act (MWA),
ch. 49.46 RCW, was never intended to restrict the type of compensation system an
employer may use, whether it be an hourly, salary, commission, or piece-rate system.
Rather, the statute's mandate is clear: every employer must pay each employee a
minimum wage *rate* of pay for every hour worked. Ignoring the statutory term
"rate," the majority creates a "per hour" right to separate compensation under the
MWA for the time agricultural pieceworkers spend performing tasks outside of
piece-rate picking work. This holding disregards the fact that piece-rate
compensation is calibrated to account for the so-called "down time" necessarily
involved in piecework. Nothing in the MWA disallows workweek averaging of
piece-rate pay to subsume both production and nonproduction time. Because the
majority's erroneous interpretation of the MWA departs from its plain language and

from years of consistent interpretation by the agency charged with enforcing the statute, I respectfully dissent.

I.  The MWA Does Not Mandate Separate Hourly Compensation for Time Spent on "Activities outside of Piece-Rate Picking Work"

This case requires us to decide if the MWA mandates that agricultural employers pay their pieceworkers separate hourly compensation "for time spent performing activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)." Order Certifying Questions & R. to Wash. Supreme Ct. & Staying Deadlines & Proceedings, *Carranza v. Dovex Fruit Co.*, No. 2:16-cv-00054-SMJ at 2 (E.D. Wash. Mar. 3, 2017) (Order Certifying Questions). Stated differently, the question is whether the MWA allows for piecework compensation plans to subsume production as well as nonproduction work time, so long as the average hourly wage in each week meets the statutory minimum.

*A. Piece-Rate Work Is Not Synonymous with Piece-Rate Picking Work*

The starting point to answering the first certified question seems obvious—understanding what is meant by "activities outside of piece-rate picking work." It seems only logical that we would want to know the subject matter of the certified questions before proceeding to answer them. The district court drew a line between piece-rate picking work and nonproduction activities outside of picking work based on Dovex Fruit Co.'s compensation plan. *See* Order Certifying Questions at 2

(describing "activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)"). The term "Piece Rate Down Time" is described in the record as including "[m]oving [l]adders, moving from block to block, weather down time, waiting for bins." Stipulation of Facts for Questions Certified to Wash. Supreme Ct. at 5 (E.D. Wash. Mar. 3, 2017) (Stipulation of Facts). "Piece Rate Down Time" activities are also described to include transporting ladders from a company trailer to the areas where workers pick fruit, transporting ladders from where they were used to pick fruit back to the company trailer, and traveling between orchard blocks (by foot or vehicle). Stipulation of Facts at 3-4. Although the pieceworker is not picking during "Piece Rate Down Time" activities, these nonpicking activities are described as integral and indispensable to the principal activity for which the workers are employed, i.e., harvesting the fruit.

Viewed in this context, when Judge Mendoza in the first certified question uses the phrase *"and similar work,"* he is presumably referring to other nonpicking activities that are similarly geared toward the ultimate goal of fruit production. Order Certifying Questions at 2 (emphasis added). "Similar" nonpicking activities would include waiting for equipment and materials necessary for picking fruit (e.g., bags and ladders), receiving instructions before picking, storing equipment and materials after picking is complete, and waiting in one orchard block before traveling

to the next block. These activities are associated with the harvesting task on which the piece rate is based.[1] Whether Dovex or other employers may decide to pay hourly wages for some or all of the activities outside of piece-rate picking work is irrelevant; the question is whether the MWA categorically prohibits subsuming the pay for these tasks into the piece-rate compensation structure.

The majority essentially equates piece-rate work with piece-rate *picking* work, on the premise that "'[i]f the picker is not picking . . . , the picker is not earning money.'" Majority at 12 (quoting *Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 653, 355 P.3d 258 (2015) (second alteration in original)). It thus recasts all work except piece-rate picking work as hourly work, claiming that "[i]t is undisputed that time spent on work outside the scope of piece-rate picking . . . is hourly work." *Id.* at 13. In fact, the parties do dispute whether the type of nonpicking work described in the record as "Piece Rate Down Time and similar work" is hourly work or is instead nonproduction work subsumed in the piece rate. The majority seeks to reframe the certified questions by redefining the relevant

---

[1] Dovex notes that agricultural employers vary the piece rate paid throughout the season to account for increased nonproduction time during certain periods. *See* Dovex Fruit Co.'s Answering Br. at 16 ("The reason Dovex must vary its piece rate is for the obvious purpose of taking into account all of the various non-picking tasks that affect the number of pieces a piece rate employee can pick per day. As time required to perform these non-picking tasks goes up, so too does the piece rate to attract and maintain the piece rate employee.").

terms. It suggests, for example, that because the plaintiffs do not dispute that piece-rate pay may subsume certain nonpicking work, such as moving ladders within orchard blocks or emptying fruit bins, such work falls outside the certified question. *Id.* at 4-5 & n.2. At the same time, the majority attempts to sweep into the ambit of "Piece Rate Down Time and similar work" tasks that nobody suggests are subsumed into piece-rate pay, such as cleaning toilets. *Id.* at 12. The majority's approach defines away the certified question, leaving it to conclude that employees have "a right to hourly compensation for hourly work." *Id.* at 16. Of course they do, but the question is whether the work at issue in this case is hourly work.

We should answer the first certified question as it is presented—distinguishing between piece-rate picking work (i.e., production time) and piece-rate down time and similar work (i.e., nonproduction time). *See* Pls.' Resp. to Def.'s Br. Regarding Certification to Wash. Supreme Ct. at 5 (noting certified question should be framed based on "the undisputed fact that Dovex does not separately pay for work performed outside of *active production work* that is paid on a piece-rate basis" (emphasis added)). Understanding that these are the relevant categories of piece-rate work at issue, nothing in the MWA requires payment for piece-rate down time and similar work on an hourly basis. In holding that the MWA requires per hour compensation for such work, the majority misreads the plain language of RCW

49.46.020 and mistakenly distances the MWA from the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, on which it was modeled. The majority further relies on inapposite cases that address hourly (not piece-rate) compensation, and brushes aside years of clear regulatory policy and guidance by the Washington Department of Labor & Industries (DLI), which is charged with enforcing the MWA. Finally, the majority erroneously interprets our recent decision in *Lopez Demetrio* as supporting its view, when in fact that case reinforces that the MWA allows workweek averaging of piece-rate compensation as a permissible measure of minimum wage compliance.

> B. *The Plain Language of RCW 49.46.020 Is Clear: Employers Must Pay Employees Wages at a* Rate *Not Less Than the Minimum Wage per Hour of Work*

The MWA was enacted to "establish[] a minimum standard for wages and working conditions of all employees in this state." RCW 49.46.120. To accomplish this purpose, the MWA regulates minimum wage rates and directs employers to pay their employees not less than the minimum hourly wage, mandating that "every employer shall pay to each of his or her employees who has reached the age of eighteen years *wages at a rate of not less than* [*minimum wage*] *per hour.*" RCW 49.46.020(1) (emphasis added). At issue here is a question of pure statutory interpretation—whether the latter portion of this sentence requires separate hour-by-

hour compensation for activities outside of piece-rate picking work, such as transporting ladders to and from fields, waiting for equipment, or receiving instructions before picking.

The majority concludes that the MWA's plain language unambiguously provides employees a right to compensation for each individual hour worked. Majority at 8. The majority's plain language analysis begins and ends with the last two words in RCW 49.46.020(1)—"per hour." Relying exclusively on this language, the majority concludes that "[t]he legislature's choice of the words 'per hour' evinces an intent to create a right to compensation for each individual hour worked, not merely a right to the workweek averaging." *Id.* However, the majority neglects to consider, and effectively reads out of RCW 49.46.020(1), an equally important term that appears earlier in the same sentence—the word "rate." In this regard, the majority's reading of RCW 49.46.020(1) violates the principle that a reviewing court is duty-bound to give meaning to every word in a statute and to avoid rendering any language superfluous. *City of Seattle v. Williams*, 128 Wn.2d 341, 349, 908 P.2d 359 (1995).

The MWA prescribes a minimum wage *rate* per hour, which is not the same as a minimum wage that must be paid *per hour*. *See Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 834 n.4, 991 P.2d 1126 (2000) (*SPEEA*)

("Minimum wage *rates* are regulated by RCW 49.46.020, which requires an employer to 'pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than [minimum wage] per hour.'"). The MWA defines "wage" as "compensation due to an employee by reason of employment . . . ." RCW 49.46.010(7). "Rate" is commonly understood as "[p]roportional or relative value; the proportion by which quantity or value is adjusted." BLACK'S LAW DICTIONARY 1452 (10th ed. 2014). Viewing the "per hour" language in context, the MWA's minimum wage provision measures the relative value, i.e., rate, of the wage on an hourly basis. It does not impose a right to compensation on a per hour basis, as the majority maintains.

The plain language of RCW 49.46.020 simply requires employers to pay employees the equivalent of the minimum wage rate for each hour of work. Nothing in the MWA restricts the type of compensation system an employer may use, whether it be an hourly, salary, commission, or piece-rate system. The MWA neither distinguishes between different types of work activities nor mandates separate hourly compensation for specific categories of work. Rather, as it applies here, the relevant MWA mandate is that whatever compensation scheme is agreed on, it must result in a wage that is at least the equivalent of the minimum hourly wage rate for all hours worked. As this court has previously recognized, the MWA "merely sets

the floor below which the agreed rate cannot fall without violating the statute." *SPEEA*, 139 Wn.2d at 835 (citing RCW 49.46.020(1)).

A comparison of the plain language of the MWA with comparable language in the FLSA supports this view. It is well established that the MWA is based on the FLSA. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 868, 281 P.3d 289 (2012) ("We have repeatedly recognized that the 'MWA is based on the [FLSA].'"); *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000) ("Because the MWA is based upon the FLSA, federal authority under the FLSA often provides helpful guidance."); *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 524, 7 P.3d 807 (2000) ("When construing provisions of the [MWA], this Court may consider interpretations of comparable provisions of the [FLSA] as persuasive authority."); *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 862 n.6, 93 P.3d 108 (2004) ("The FLSA is persuasive authority because the MWA is based on the FLSA."); *see also Clawson v. Grays Harbor Coll. Dist. No. 2*, 109 Wn. App. 379, 35 P.3d 1176 (2001), *aff'd*, 148 Wn.2d 528, 61 P.3d 1130 (2003); *Tift v. Prof'l Nursing Servs., Inc.*, 76 Wn. App. 577, 886 P.2d 1158 (1995). "At least where there is no contrary legislative intent, when a state statute is 'taken "substantially verbatim" from [a] federal statute, it carries the same construction as the federal law and the same interpretation as federal case law.'" *Anfinson*, 174 Wn.2d at 868

(alteration in original) (quoting *State v. Bobic*, 140 Wn.2d 250, 264, 996 P.2d 610 (2000) (quoting *State v. Carroll*, 81 Wn.2d 95, 109, 500 P.2d 115 (1972)))).[2]

The majority contends that it is inappropriate to rely on the FLSA for guidance in this case because the FLSA minimum wage provision contains the term "workweek," while the MWA does not include similar language. Majority at 8-9. In the majority's view, the MWA is therefore distinguishable from the federal minimum wage provision "because our legislation states 'per hour,' rather than 'in any workweek.'" *Id.* at 9. A closer reading of the FLSA's plain language and the legislative history for both statutes exposes several flaws in this argument.

First, the MWA and FLSA provisions at issue do not differ in their relevant language. Though the forepart of the federal minimum wage provision uses the phrase "in any workweek," the operative portion of the statute requires wages at "*rates* . . . not less than [minimum wage] *an hour.*" 29 U.S.C. § 206(a) (emphasis added); *see Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 886 n.1 (9th Cir. 2017) (noting "'in any workweek'" is part of a prefatory clause and not a measure of minimum wage compliance). The FLSA states in relevant part:

---

[2] The majority asserts that "[t]he dissent rests its analysis on the mistaken assumption that we are bound by interpretations of the FLSA." Majority at 9 n.5. To the contrary, at no point do I assume to be bound by the FLSA. Instead, as this court has done many times before, I simply "consider interpretations of comparable provisions of the [FLSA] as persuasive authority" when construing provisions of the MWA. *Inniss*, 141 Wn.2d at 524.

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . wages at the following *rates*:
> (1) Except as otherwise provided in this section, not less than—
> (A) [minimum wage] *an hour*.

29 U.S.C. § 206(a) (emphasis added). Similar to the MWA, which requires employers to pay employees "wages at a *rate* of not less than [minimum wage] *per hour*," RCW 49.46.020(1) (emphasis added), the focus of the FLSA is also on the minimum *rate* of pay. Although recognizing that "we must give effect to every word when engaging in statutory interpretation," majority at 9 n.5, the majority nonetheless ignores this key term—"rate"—in its plain language analysis.

The majority's focus on the absence of the term "workweek" is further undermined by the legislative history of both statutes. It is doubtful that our legislature intentionally diverged from the FLSA by not including the phrase "in any workweek." This is unlikely because the "in any workweek" language did not appear in the FLSA until *after* the MWA was enacted. When the FLSA was passed in 1938, the original version of the minimum wage provision read:

> (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—
> (1)  . . . not less than 25 cents an hour.

Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 6(a)(1), 52 Stat. 1060, 1062.

The MWA was adopted in 1959 with a minimum wage provision that looked almost

identical to the original version of the federal minimum wage provision:

> Every employer shall pay to each of his employees wages at a rate of not less
> than one dollar per hour except as may be otherwise provided under this act.

LAWS OF 1959, ch. 294, § 2. The similarities between the 1938 federal minimum

wage provision and the MWA's 1959 minimum wage provision are undeniable.

Both provisions use the terms "wages," "rate," and "hour," without any mention of

"workweek."

It was not until 1961, two years after the MWA was adopted, that Congress

modified the introductory phrase of the federal minimum wage provision to add a

reference to the workweek. *See* Act of May 5, 1961, Pub. L. No. 87-30, § 5(a)(1)-(2),

75 Stat. 65, 67 (amending the FLSA of 1938—inserting the "in any workweek"

language). This amendment was merely clarifying. Prior to 1961, the federal

Department of Labor had consistently adhered to the workweek-averaging measure

of minimum wage compliance, which is evidenced by Department of Labor policy

statements and guidance. *Dove v. Coupe*, 245 U.S. App. D.C. 147, 759 F.2d 167,

171 (1985) (the Department of Labor "established the workweek as the measuring rod for compliance at a very early date").[3]

Notably, based on the Department of Labor's express adoption and persistent adherence to workweek averaging, the Ninth Circuit recently interpreted the 1961 amendment as providing "an even stronger foundation to read the minimum-wage provision to preserve, not upset, the entrenched per-workweek measure." *Douglas*, 875 F.3d at 889.[4] As it relates to the MWA, at the time Washington adopted the MWA the workweek measure of minimum wage compliance was already well established and widely accepted.

In sum, the plain language of the MWA does not impose a per-hour right to minimum wage compensation, nor does it prohibit the per-workweek measure of

---

[3] For example, in 1940, just over a year and a half after FLSA was passed, the Department of Labor issued a policy statement providing that "[f]or enforcement purposes, the Wage and Hour Division is at present adopting the workweek as the standard period of time over which wages may be averaged to determine whether the employer has paid the equivalent of [the minimum wage]." THE BUREAU OF NAT'L AFFAIRS, INC., WAGE AND HOUR MANUAL 185 (1942).

[4] The plaintiffs in *Douglas* made the same argument about the FLSA that the plaintiffs (and the majority) make here about the MWA. They argued that the FLSA measures minimum wage compliance on an hour-by-hour basis and does not allow averaging because "FLSA's plain language 'speaks only of an *hourly* wage'" and "[t]he 'statute's text is explicit that, with respect to the minimum wage, the only metric Congress envisioned was the hour, with each hour having its own discrete importance.'" Appellant's Opening Br., *Douglas v. Xerox Bus. Servs., LLC*, No. 16-35425, at 23 (9th Cir. Sept. 28, 2016) (quoting *Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 23 (D. Mass. 2011)). The Ninth Circuit correctly rejected this view, though in doing so it did not find the "workweek" language in the prefatory clause to be significant. *Douglas*, 875 F.3d at 886-87 & n.1.

minimum wage compliance, as the majority holds. To the contrary, like the FLSA on which it was modeled, the MWA requires employers to pay employees the equivalent of the minimum wage *rate* for every hour worked. While the MWA does not expressly address the issue of whether separate pay is required for piece rate down time and similar work, it contemplates a single minimum wage calculation for all piece-rate work. The MWA neither distinguishes between different categories of work activities nor mandates separate compensation. Quite simply, the act requires employers to compensate employees a rate of not less than the minimum wage and to pay employees for each hour worked.[5]

---

[5] The first certified question presents a narrow issue—whether the MWA allows piece-rate pay to subsume nonproduction work time. At times, the briefing goes beyond this question. For example, the workers allege that Dovex's compensation plan enables employers to "require an employee to perform five hours of piece-rate work and 35 hours of other work activities in a week and refuse to pay the employee for the 35 hours of non-piece-rate work so long as the employee receives at least minimum wage" under the workweek averaging calculation. Pls.' Opening Br. on Certified Questions at 31. Whether Dovex willfully deprived the workers of a meaningful opportunity to earn their piece-rate pay is an important, but separate, issue that is not before us. If Dovex did in fact deprive the workers of any part of their wages, Dovex admits that the workers would have claims under the wage rebate act, RCW 49.52.050, and also potentially breach of contract claims. Def.'s Answering Br. at 20. Notably, the workers have asserted wage rebate act claims elsewhere in the litigation. Compl. at 15-16.

C. *DLI Has Consistently Interpreted the MWA as Allowing Workweek Averaging for Pieceworkers, and Courts Should Defer to the Agency's Interpretation*

While the proper interpretation of the MWA in this case begins and ends with the statute's plain language, it should give us pause that the majority's interpretation is at odds with the long-standing view of the agency charged with administering the MWA. DLI has consistently interpreted RCW 49.46.020(1) to allow for workweek averaging to determine minimum wage compliance under piece-rate compensation plans. The majority swiftly dismisses DLI's interpretation as nonbinding and undeserving of any deference because "'[t]his court has the ultimate authority to interpret a statute.'" Majority at 14-15 (alteration in original) (quoting *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846 (2007)). However, under Washington law, deference is owed to an agency's interpretation of a state statute "if the law being interpreted is within [that] agency's expertise." *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 901, 31 P.3d 1174 (2001).

DLI regulations and policies recognize that the MWA allows for workweek averaging under piece-rate compensation plans. *See, e.g.*, WAC 296-129-021; WAC 296-131-117(1).[6] Administrative policy ES.A.3 describes the standards DLI uses to

---

[6] The majority correctly notes that the specific regulation addressing workweek averaging for pieceworkers appears in a chapter of the administrative code that does not apply to agricultural workers. *See* WAC 296-126-021; majority at 13-14. The later-added

determine whether an employee has been paid the statutory minimum hourly wage when compensated on a nonhourly basis, as in piece-rate work. Administrative Policy ES.A.3 (revised July 15, 2014), http://www.lni.wa.gov/WorkplaceRights/ files/policies/esa3.pdf [https://perma.cc/3JKA-GLQJ]. The following section of the policy is persuasive as to DLI's approval of weekly averaging as a measure of minimum wage compliance for pieceworkers:

> For employees paid on commission or piecework basis, wholly or in part . . . the commission or piecework earnings earned in each workweek are credited toward the total wage for the pay period. The total wage for that period is determined by dividing the total earnings by the total hours worked; the result must be at least the applicable minimum wage for each hour worked. *See* WAC 296-126-021.

*Id.* at 2.

Additionally, following this court's decision in *Lopez Demetrio*, DLI issued a revised administrative policy on meal and rest periods for agricultural workers. Administrative Policy ES.C.6.2 (revised Aug. 11, 2016), http://www.lni.wa.gov/

---

chapter that pertains to agricultural employment, ch. 296-131 WAC, contains no specific workweek averaging provision. However, a provision identical to WAC 296-126-021 is contained in the chapter applicable to minor workers, including agricultural workers. *See* WAC 296-131-117(1). The majority makes no attempt to explain why DLI would interpret RCW 49.46.020 differently for adult and minor agricultural workers, stating simply, "The certified questions do not concern minor agricultural workers." *Id.* at 14 n.5. I believe, however, that the omission of adult agricultural workers from the otherwise universal rule of workweek averaging under RCW 49.46.020 does not reflect a conscious policy decision. I say this because, as discussed in the main text, DLI has consistently included adult agricultural workers in its published policies explaining the workweek averaging regulation, WAC 296-126-021.

WorkplaceRights/files/policies/esc62.pdf [https://perma.cc/AKX8-RP5F]. This policy explains how employers should calculate a worker's "regular rate of pay" in order to compute the amount owed for rest periods: "This is done by dividing the total compensation earned in a workweek by the total active hours of work (the "total active hours of work" does not include the break time). The result is the regular rate of pay for the week." *Id.* at 2. The policy gives some examples of how employers should calculate the rate of pay to ensure it is equal to or greater than the minimum wage:

> First, add up the worker's total piece-rate earnings for the workweek. Even if the worker earns different piece rates during the workweek, total all piece-rate earnings for the week. Next, divide those earnings by the worker's *active* hours of work (exclude rest period time). This amount is the worker's "regular rate" of pay.

*Id.* This new policy is just one more piece of evidence confirming that workweek averaging is firmly established as a method for determining minimum wage compliance for pieceworkers under the MWA.[7] The majority's novel view that the MWA requires hourly compensation for pieceworkers' is out of step with long-standing agency interpretation of the law.

---

[7] As explained below, this new policy also confirms that our decision in *Lopez Demetrio* provides no support for the majority's "per hour" interpretation of the MWA.

D. *The Majority's "per Hour" Interpretation of the MWA Finds No Support in Case Law Interpreting the Statute*

The majority relies on "precedent from comparable situations" to support its holding that the MWA provides a right to hour-by-hour compensation for piece rate down time and similar work. Majority at 9-11 (discussing *Stevens v. Brink's Home Securities, Inc.*, 162 Wn.2d 42, 47, 169 P.3d 473 (2007); *SPEEA*, 139 Wn.2d 824; and *Alvarez v. IBP, Inc.*, 339 F.3d 894, 898 (9th Cir. 2003)). These cases are not at all comparable to the present case, as they involved workers who were contractually required to donate time to their employers.

In each of the cited cases, the employer contractually refused to pay any wage for certain required work activities. *See Stevens*, 162 Wn.2d at 47-50 (employer violated MWA by refusing to compensate technicians for time spent driving company vehicle to first jobsite and back home from last jobsite); *SPEEA*, 139 Wn.2d at 827, 835 n.6, 838 (employer violated MWA by refusing to compensate employees for time spent attending preemployment orientation sessions); *Alvarez*, 339 F.3d at 913-14 (employer violated MWA by refusing to compensate factory workers for time spent donning and doffing protective work gear). Here, in contrast, Dovex records each employee's daily work time and the applicable piece rate, and its compensation system guarantees that employees receive at least the minimum

-18-

wage for every hour worked in a week. This is not a case about unpaid workers or unpaid time. Thus, *Stevens*, *SPEEA*, and *Alvarez* are factually inapposite.

The second flaw in the majority's case law analysis is more nuanced. While the majority says *Alvarez* "specifically rejected using workweek averaging to measure compliance with the MWA," majority at 11, the reasoning in that case in fact undermines the majority's position. In *Alvarez*, the Ninth Circuit considered whether the MWA required an employer to compensate hourly employees for the time it took them to change into required specialized protective clothing and safety gear. While the *Alvarez* court concluded that employees retain a right to be paid minimum wage for every hour worked under Washington law, it adopted the "per-hour" measure of minimum wage compliance only for one particular employment category—*hourly employees*. *See, e.g., Alvarez*, 339 F.3d at 912 ("Washington state courts have yet to determine whether *hourly-employees*, like plaintiffs, have a per-hour or a work-week right to minimum wage." (emphasis added)), 913 (holding that "the Washington Supreme Court would construe the WMWA as using a per-hour standard for *hourly employees*" (emphasis added)).

Significantly, in reasoning that hourly employees retain a per-hour right to minimum wage under the MWA, the *Alvarez* court found it important that DLI regulations "permit use of the work-week measure only for particular employment

categories," including pieceworkers. *Id.* at 912-13 (citing, inter alia, WAC 296-126-021, expressly allowing for workweek averaging for pieceworkers). The court aptly observed, "Were the Washington legislature disposed to apply the workweek measure to hourly employees, it could have done so as expressly as it did vis-à-vis other employment types." *Id.* Thus, unless we entertain the majority's fiction that pieceworkers are actually hourly workers when engaged in activities outside of piece-rate picking work, *Alvarez* undermines rather than supports the majority's position.

The last case the majority leans on is *Lopez Demetrio*, quoting our observation that "'[i]f the picker is not picking . . . , the picker is not earning money.'" 183 Wn.2d at 653 (second alteration in original); *see* majority at 12. The majority reads this statement of a simple truth as signaling our rejection of workweek averaging under the MWA. But, a closer look at the analysis in *Lopez Demetrio* reveals why this reading is wrong. The court in *Lopez Demetrio* fully recognized that one reason the workers in that case were left to "finance their own rest breaks" was because the MWA allows for piece-rate compensation to be measured on a workweek basis. *Lopez Demetrio*, 183 Wn.2d at 653. Thus, when the employer in *Lopez Demetrio* divided the employees' piece-rate earnings by their total hours worked, rest breaks

were left uncompensated by the employer. *Id.* This violated the clear mandate of WAC 296-131-020(2) that rest breaks must be paid "on the employer's time."

The court in *Lopez Demetrio* made clear that "a pieceworker's right to separate pay for rest breaks *springs not from the MWA* but rather from WAC 296-131-020(2)'s mandate that rest breaks be paid 'on the employer's time.'" *Id.* at 661 (emphasis added). While the first certified question in *Lopez Demetrio* asked whether separate pay was required "under WAC 296-131-020(2) and/or the [MWA]," we answered the question based solely on the regulation, not the MWA. *Id.* at 654. In fact, our analysis of the separate compensation issue contained not a single reference to the MWA. It was WAC 296-131-020, not the MWA, that mandated separate compensation for the "periods of inactivity," i.e., the rest breaks at issue in that case. *Id.* at 652, 656. Here, the workers rely solely on RCW 49.46.020 of the MWA as the statutory anchor for their claim. There is no comparable regulation. As we explained in *Lopez Demetrio*, the MWA itself does not prohibit workweek averaging or impose a requirement of hourly compensation for nonproduction time in a piece-rate compensation system.

While the piece-rate compensation plans at issue in *Lopez Demetrio* and this case may be similar, rest breaks are simply not analogous to "activities outside of piece-rate picking work (e.g., 'Piece Rate Down Time' and similar work)." Order

Certifying Question at 2. Unlike the nonpicking work tasks at issue in this case (e.g., traveling between orchards, waiting for weather to clear, transporting ladders to or from a company trailer, attending work meetings), the rest break requirement in WAC 296-131-020 refers to periods of inactivity during which no work can be performed. Accordingly, when we used the phrase "periods of inactivity" in *Lopez Demetrio*, we were referring to mandated periods of what might better be described as *nonwork*—time spent sitting, cooling down, rehydrating, and physically recuperating from picking activities. 183 Wn.2d at 652, 656 (distinguishing between the two periods of separately compensable time—working or resting—we used the phrasing, "the piece rate is earned only while the employee is working (i.e., no pay accrues during rest breaks)"). This category of nonwork is "critical to the health and effectiveness of employees, especially those working long hours outside." *Id.* at 658. We recognized that folding rest breaks into piece-rate compensation would "incentivize missed rest breaks at the expense of the employee's health." *Id.* at 659. The policies at issue in *Lopez Demetrio*, specifically addressed in WAC 296-131-020, are not at issue in the certified questions in this case.

Our answer to the second certified question in *Lopez Demetrio* confirms that workweek averaging of piece-rate earnings does not violate the MWA. Having decided in *Lopez Demetrio* that rest breaks must be paid "on the employer's time"

under the specific regulation, our further task was to determine the proper rate of pay required for the break periods. *Id.* at 659-60. Without expressly using the term, we described workweek averaging as an acceptable measure of compliance. *Id.* at 660-61 (calculating a pieceworker's "defacto hourly rate" as "the quotient of an employee's piece rate earnings by the number of hours he or she worked"). We provided a detailed example to demonstrate the averaging minimum wage calculation in practice, casting away any remaining doubt as to whether workweek averaging is appropriate for agricultural pieceworkers:

> Suppose an employee is paid 50 cents per pound of fruit picked (the piece rate). The employee works 5 8-hour days and takes 20 minutes of rest breaks each day, as provided by WAC 296-131-020(2). The employee has spent 38.6 hours producing and 1.4 hours on breaks, for 40 hours of total work. If the employee produces 750 pounds of fruit, he or she earns $375.00 that week.

*Id.* at 661 n.3. In order to ensure rest breaks are paid "on the employer's time," as required by WAC 296-131-020 (but not the MWA itself), we directed that the total earnings in this example ($375) must be divided by all hours worked, with only time spent resting excluded (38.6 hours). *Id.* at 662 & n.4. In our example, we did not instruct employers to separately track work activities outside of piece-rate picking work, such as moving ladders or waiting for work materials. Nor did we require employers to provide separate compensation for those nonpicking activities, because they are not like rest breaks. Instead, as the majority must concede, our decision in

-23-

*Lopez Demetrio* allowed for workweek averaging as an acceptable method of calculating a pieceworker's rate of pay. *See* majority at 12.[8]

In sum, the majority finds no support in our precedent for its ambitious reimagining of the MWA as a guarantor of "per hour" compensation. The recognition in *Stevens*, *SPEEA*, and *Alvarez* that hourly workers must be paid for all hours worked does not undercut the long-standing practice of allowing workweek averaging to determine minimum wage compliance for pieceworkers. Nor does the holding in *Lopez Demetrio*—that a specific regulation required rest breaks to be paid separately from hours worked—support the majority's view that RCW 49.46.020 disallows workweek averaging to determine minimum wage compliance.

At the end of the day, the majority has simply rewritten the MWA. It has abruptly departed from prior precedent aligning the MWA with its federal counterpart, the FLSA. And, it has rejected out of hand the long-standing interpretation of the MWA by the agency charged with enforcing it. The consequences of today's holding extend far beyond this case. The statute the majority has rewritten, RCW 49.46.020, broadly applies to all nonhourly employees

---

[8] As noted above, DLI subsequently read our decision in *Lopez Demetrio* this same way and issued a revised administrative policy that specifically instructs agricultural employers to calculate piece-rate workers' wages using workweek averaging (excluding rest breaks) in order to determine if the rate of pay complies with the minimum wage. Administrative Policy ES.C.6.2, at 2; *supra* note 5.

covered under the MWA, including nonagricultural pieceworkers and commission-based employees. Reading it to require hour-by-hour compensation for nonproduction time will seriously undermine the piece-rate payment system as a viable compensation plan in many settings.

II. The Majority's "per Hour" Interpretation of the MWA Radically Changes Washington Law and Undermines Piece-Rate Compensation Plans

Do not believe the majority's promise that today's decision is a narrow holding. The majority claims to be interpreting the MWA only in the limited context of adult agricultural pieceworkers. Majority at 13-14. However, the majority's holding that the MWA provides employees a right to minimum wage compensation for each individual hour of work is based on its reading of RCW 49.46.020, which applies equally to nonagricultural pieceworkers and commission-based employees. Majority at 9 ("the MWA's plain language requires us to conclude that employees have a per hour right to minimum wage").

The practical effect of the majority's holding is to accept the plaintiffs' plea to transform the MWA into California minimum wage law, despite the fact that federal courts have recently rejected arguments to do so. *See Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2016 WL 1687961, *2 (W.D. Wash. Apr. 26, 2016) (holding that "Plaintiffs' underlying assumption is faulty: the MWA does not require payment on an hourly basis"); *Mendis v. Schneider Nat'l Carriers Inc.*, No.

C15-0144-JCC, 2016 WL 6650992, *3 (W.D. Wash. Nov. 10, 2016) ("This Court reiterates . . . that 'Plaintiffs' underlying assumption is faulty'" (quoting *Helde*, WL 1687961, at *2)); *Hill v. Xerox Bus. Servs. LLC*, 868 F.3d 758, 761 (9th Cir. 2017) ("Piecework employees . . . are entitled to a minimum wage based on a work-week period.").[9] The majority ushers in its transformation silently, without a single reference to the California Labor Code or California case law. Yet the appeal to California law appears consistently throughout the briefing and was mentioned several times at oral argument. The plaintiffs argue that "California's minimum wage law has language that is essentially the same as the MWA's language" and thus "case law from California on the issue of minimum wage compliance is persuasive." Pls.' Opening Br. on Certified Questions at 23. At oral argument, when plaintiffs' counsel was asked to clarify whether he was asking the court to interpret our minimum wage act to mirror the California statute and require hourly compensation to the exclusion of workweek averaging, plaintiffs' counsel responded:

---

[9] Notably, in *Hill v. Xerox Business Services, LLC*, currently before this court on certified questions from a class action filed in federal court, plaintiffs make the exact same per-hour argument raised here on behalf of agricultural workers, but there in the context of *nonagricultural* pieceworkers. Appellee's (Hill) Answering Br., *Hill v. Xerox Bus. Servs., LLC*, No. 94860-7, at 27 (Wash. Nov. 6, 2017) ("when pieceworkers are required to perform non-production work during which they cannot earn piece rates—as the call center workers here have—they are entitled to be paid for each hour of that work time at the minimum wage or higher").

> That's right. . . . And so in California there is a series of cases under a minimum wage law with similar language to our minimum wage law and the courts have consistently found that you have to separately pay for this work time—work time during which employees are unable to earn a piece rate because they're required to do other things.

Wash. Supreme Court oral argument, *Carranza v. Dovex Fruit Co.*, No. 94229-3 (September 14, 2017), at 8 min., 18 sec. through 9 min., 32 sec., video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org; *see also id.* at 10 min., 31 sec. through 10 min., 48 sec. (plaintiffs' counsel stating that the MWA contains language "that is much more like California's language which says you have to pay per hour for all hours worked"). While the majority is careful not to directly cite or rely on California law, its interpretation of the MWA fully embraces the plaintiffs' analogy. Majority at 16.

This attempt to equate the Washington MWA with California's Labor Code and related case law is untenable. First, contrary to the plaintiffs' argument, the language of California's minimum wage is not "essentially the same as the MWA's language." Pls.' Opening Br. on Certified Questions at 23. A California wage order states that "[e]very employer shall pay to each employee wages not less than [minimum wage] *per hour for all hours worked.*" Cal. Indus. Welfare Comm'n, Order 14-2001 § 4(A) (revised July 2014) (Regulating Wages, Hours and Working Conditions in the Agricultural Occupations) (emphasis added), http://www.dir. ca.gov/iwc/iwcarticle14.pdf [https://perma.cc/BRK5-LGH2]. Unlike the MWA's

minimum wage provision (or the FLSA, on which the MWA was modeled), the word "rate" does not appear anywhere in the California statute. Instead, the California law requires payment of a minimum wage, not a wage rate, per hour "for all hours worked." California courts have interpreted the "for all hours worked" language as entitling employees to an hourly minimum wage for each hour worked, therefore prohibiting workweek averaging as a measure of minimum wage compliance. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323, 37 Cal. Rptr. 3d 460 (2005) (holding that "for all hours worked" language "expresses the intent to ensure that employees be compensated at the minimum wage for each hour worked"); *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 155 Cal. Rptr. 3d 18 (2013) (extending the *Armenta* decision to piece-rate workers).

Furthermore, whereas the MWA is expressly based on the FLSA, California courts have consistently held that "the minimum wage provisions of the FLSA differ significantly from California's minimum wage law." *Armenta*, 135 Cal. App. 4th at 323. Whereas the FLSA permits workweek averaging as an acceptable measure of minimum wage compliance, California courts have interpreted the "for all hours worked" language in the California wage order as ensuring minimum wage compensation for each hour worked. *Id.* And, under California law, workweek averaging is impermissible for *all types of nonhourly employment*, including

-28-

nonagricultural piecework and commission-based employment in addition to agricultural piecework.

Finally, it is worth noting that California courts have interpreted the different language of that state's minimum wage law in a way that is *consistent* with its enforcing agency's view of the statute—something today's majority refuses to do. Several years before the first California court even considered the issue of workweek averaging, California's Division of Labor Standards Enforcement (DLSE) issued an opinion letter expressly requiring payment of the minimum wage for "each and every separate hour worked." Letter from Anne Stevason, Acting Chief Counsel of DLSE, to William J. Flynn & Susan Itelson 10 (Jan. 29, 2002), https://www. dir.ca.gov/dlse/opinions/2002-01-29.pdf [https://perma.cc/STE3-CCHB]. In its opinion letter, the DLSE acknowledged that the minimum wage law was susceptible to two divergent interpretations—the obligation to pay minimum wage either "attaches to each and every separate hour worked" or extends to "the total number of hours worked in the pay period," without consideration of any hour in isolation. *Id.* The DLSE endorsed the former interpretation and expressly rejected the averaging formula for all employment types, separating California's minimum wage act from the FLSA.

As noted, Washington's DLI has read our different statutory language differently and has consistently endorsed the use of workweek averaging for all nonhourly employees, as evidenced by DLI's regulations, administrative policies, and guidance. In contrast to the DLSE's explicit rejection of workweek averaging under California law, DLI has steadily assured Washington employers and employees that workweek averaging is acceptable under the MWA. That the DLSE and our DLI would take opposite positions as to workweek averaging makes perfect sense given our distinguishable statutory frameworks. Whereas California's minimum wage law establishes a minimum *wage* per hour "for all hours worked," Washington's MWA, like the FLSA, establishes a minimum *rate* of pay per hour, permitting the relative value of an employee's wage to be measured per hour (i.e., weekly earnings divided by hours worked). This entire history of different statutory language and different agency interpretations is absent from the majority opinion, which ushers in a radical change in the MWA with very little analysis.

The majority's reinterpretation of RCW 49.46.020 charts an entirely new direction for minimum wage compliance in Washington. Everyone, including DLI, will have to revise years of policy and practice, and the legislature will have to further consider whether statutory provisions that interact with RCW 49.46.020 need to be amended. *See, e.g.*, RCW 49.46.130(1) (requiring payment of overtime at one

and one-half times the employee's "regular rate"); WAC 296-128-550 (allowing overtime pay based on either the piecework rate during the overtime period or the "regular rate of pay" determined by workweek averaging). All of this is so unnecessary because the MWA does not require it. Washington's minimum wage law fully allows for piece-rate compensation schemes that rely on workweek averaging, so long as pieceworkers are paid at least the minimum wage rate for every hour worked.

## CONCLUSION

Piece-rate compensation plans are wholly consistent with the MWA, and piece-rate pay may subsume both production and nonproduction time for agricultural workers. Nothing in the text, purpose, or history of the MWA requires employers to pay a separate "per hour" wage for the time employees spend on "Piece Rate Down Time and similar activities." I would answer no to the first certified question and, therefore, not address the second question.